## KROOT v. UNITED STATES.
### No. 4923.

Circuit Court of Appeals, Seventh Circuit.
Aug. 1, 1933.

Irving S. Abrams and Clyde C. Fisher, both of Chicago, Ill., for appellant.

Dwight H. Green, U. S. Atty., and Eugene A. Tappy, Asst. U. S. Atty., both of Chicago, Ill.

Before ALSCHULER and SPARKS, Circuit Judges, and WILKERSON, District Judge.

SPARKS, Circuit Judge.

Appellant was a cement contractor and had been for many years. He was the sole owner of his place of business on the west side of North Kilbourne avenue in Chicago, although for some undisclosed reason he had had the title to it put in the name of his nephew, Jack Breen of Huntington, Indiana. The building was a one story one with a frontage of ninety feet, extending back one hundred and thirty-five feet. He did no business on these premises in 1930 or 1931, except that in January, 1930, he and a Mr.

Glasko, an inventor, organized the Cook County Monostone Company for the purpose of manufacturing and marketing an interlocking device for stone, upon which Glasko had obtained a patent. The business was unsuccessful and none of the company's products were sold. During the year 1931 Glasko was engaged in the building at different times, working on his patents, but appellant came to it only for the purpose of getting his mail two or three times a month. There was a semi-basement under the southwest corner of the building, the ceiling of which extended higher than the main floor level of the building so that the floor of the building was higher at the west end than at the center and east end. The only entrance to the basement from the outside of the building was by means of a door in the south wall near the west end.

In October, 1932, appellant leased this basement to a stranger by the name of White who claimed to be engaged in the transportation business, at a rental of fifty dollars per month, and received from him the sum of three hundred dollars for six months rental in advance. In consideration of this advance payment, appellant constructed a small garage for the use of White's truck, adjoining the south side of the building at its west end, and enclosing two double windows of the building, the door to the basement, and a basement window just west of that door. Appellant gave White a key to the basement and retained one, as the same key operated the locks on both the main door of the building and the basement door. Very shortly thereafter, White placed a lock on the garage door and retained the keys to it, and appellant changed the combination of the lock on his front door, and from that time on, neither had access to the other's part of the building. At the time appellant leased the basement to White, he asked for no references or security, and he only saw him that one time. Appellant in signing the lease did not use his own name but signed the name of his nephew, Jack Breen.

On January 13, 1932, the government officers raided the basement and found a brewery in operation under electric motor power. There were twelve 750 gallon fermenting vats, and one 1,500 gallon carbonating tank, and all were full of beer which had an alcoholic content of more than three percent. There was a large wort vat and many barrels from which wort was running. Quite a number of barrels of beer were there also. In the garage the officers found the truck, several barrels of beer, and some barrel skids.

The contents of the garage could be seen from the inside of the main building by looking through the windows which the garage enclosed, but appellant said that he never looked through those windows. The view through one of those windows was somewhat obstructed by stones and mortar boards and other things which had been placed on the window sills on the inside of the building, perhaps by Glasko when working on his patents. However, those obstructions did not prevent one in the main building from having a rather general view of the interior of the garage if he wanted to see it. Appellant does not deny that the agents found on his premises all the things they said they found, but his defense is that he had no prior knowledge of those things. It is not claimed that anything pertaining to the brewery was found in the main building which appellant frequented, but the government insists that from all the circumstances he must have known that a brewery was being operated in his basement. He was there when the raid was made by the officers. They found him in the main building pouring oil into his automobile. The odor of fermented beer was strong all about the premises and neighborhood and at the place where he was oiling his car. The officers noticed the odor before they got to the premises and traced it there. Appellant claims, however, that he had not detected it that morning nor at any time while he was on or about the premises, although he said that he would recognize the odor of beer. The humming sound of the electric motors in the operation of the brewery was quite perceptible in the main building and about the premises, and since they were not located near the garage, they could not easily have been mistaken for the sound of the motor truck. Appellant paid the electric bills for the entire building and basement. Before the lease was made they amounted to about fifty cents a month, but afterwards they were increased to five dollars or more a month, and yet this raised no suspicion in his mind, and he still relied on White's statement that he was engaged only in the transportation business.

Under these facts the question of guilt is indeed a close one, and yet we deem the facts sufficient to require a submission to the jury, or a finding of the court on the question of guilt. The court having made the finding, we are without power to disturb it unless there is other material error in the record. Appellant contends that the court erred in sustaining an objection to a question put to witness Dinsberg and striking the answer thereto concerning appellant's reputation as

an honest, law-abiding citizen. It is quite obvious that the preceding questions had not qualified the witness to answer the question, and the question was not confined to the locality in which appellant resided. His qualification to answer was based on business dealings, and his answer, "Very reliable; always pays his bills," was not responsive to the question. The court's ruling in this respect was proper.

A like contention is made to a similar question put to witness Oslund. This question, however, was confined to appellant's reputation as a law-abiding citizen in the community in which appellant resided, and the witness stated that he knew what that reputation was. He was then asked what it was, and he replied that it was very good. On motion of the government this question and answer were stricken, and in this we think there was error. Appellant's reputation as a law-abiding citizen was directly in issue, and he had a right to prove what that reputation was. On direct examination a character witness is not required to state the facts upon which his knowledge of reputation is based, unless he is asked to do so. Here he said he was acquainted with it, and that was sufficient to admit his answer. Whether his knowledge is based on much or little evidence affects the weight of his evidence and not its admissibility. We can not say that this error was not prejudicial to appellant. On account of the paucity of the facts in relation to appellant's connection with the crime we can not say that the witness's answer to the question, if permitted to remain in the record, might not have changed the finding.

The judgment is reversed and the cause remanded with instructions to grant appellant a retrial.