GOLDEN & BOTER TRANSFER CO. *v*. BROWN & SEHLER CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—EM-
   PLOYER'S RIGHT TO PROCEED AGAINST WRONGDOER—ELECTION OF
   REMEDIES BY EMPLOYEE.

   Under section 15, part 3, of the workmen's compensation act
   (Act No. 10, Pub. Acts 1912, Extra Session), an employer
   is entitled to recover from the wrongdoer the amount of
   compensation which he was compelled to pay, under said
   act, for the death of an employee, although the death was
   instantaneous, and the deceased employee never exercised
   his right of election to proceed under the act against the
   employer, or under the common law against the wrong-
   doer.

2. SAME—RELATION OF MASTER AND SERVANT.

   In an action by the employers, under said act, to recover
   from the wrongdoer the amount of compensation paid for
   the death of an employee, where it was undisputed that
   said employee was hired by plaintiffs, was paid by them,
   and was in charge of one of their teams, it cannot be con-
   tended that he was not an employee of plaintiffs, al-
   though at the time of the accident he was engaged by the
   day in clearing away debris from a burned building
   owned by defendants under an arrangement made by them
   with plaintiffs.

3. SAME—DEFENSE OF ASSUMPTION OF RISK NOT AVAILABLE.

   In said action, under the workmen's compensation act, the
   defense of assumption of risk by the deceased employee is
   not available.

4. SAME—NEGLIGENCE—NOTICE—QUESTION FOR JURY.

   Where deceased was killed by the falling of a wall of a
   burned building owned by defendants, and there was tes-
   timony that the building inspector told one of the de-
   fendants that part of the wall which fell should come
   down, it cannot be contended that there was no proof of
   defendants' negligence.

5. SAME—UNUSUAL STORM—ACT OF GOD—QUESTION FOR JURY.

   Where it was claimed on the part of defendants that the
   cause of the falling of the wall was an extraordinary

For authorities passing upon the question of rights and reme-
dies under workmen's compensation acts where injuries were
caused by negligence of third person, see notes in L. R. A. 1916A,
360; L. R. A. 1917D, 98, and L. R. A. 1918F, 524.

On liability under English act of 1906 of third persons whose
negligence caused the injury (§ 6) L. R. A. 1916A, 100.

storm, amounting to an act of God, *held*, that said question was for the jury, under proper instructions.

6. SAME—CONSTITUTIONAL LAW—WORKMEN'S COMPENSATION ACT —TITLE OF ACT—SUFFICIENCY.

Section 15, part 3, of the workmen's compensation act, giving to the employer a right of action to recover from the wrongdoer the amount of compensation paid by said employer, *held*, not unconstitutional because not within the scope of its title. *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8.

Error to Kent; McDonald (John S.), J. Submitted October 8, 1919. (Docket No. 10.) Decided April 10, 1920.

Case by Golden & Boter Transfer Company against Brown & Sehler Company and another to recover damages paid to a dependent under the workmen's compensation act for the death of an employee killed by reason of defendants' negligence. Judgment for plaintiff. Defendants bring error. Affirmed.

*Roland J. Cleland, Earl F. Phelps* and *Lombard & Heat,* for appellants.

*Kerr & Lacey* and *M. Thomas Ward,* for appellee.

MOORE, C. J. The trial judge stated the issues involved in this litigation in his charge to the jury as follows:

"This is an action by Golden & Boter, the plaintiffs, for the use and benefit of the Zurich General Accident & Liability Insurance Company, against Brown & Sehler Company and Hoertz & Son to recover the amount of compensation which the plaintiff was compelled to pay to the widow of John Mellema, whose death was caused, as the plaintiff claims, by reason of the negligence of the defendants.

"The plaintiffs, Golden & Boter, are engaged in the business of general teaming and as a part of such business furnish teams and teamsters to contractors and

others.  Hoertz & Son are general contractors in this city, and at the time of the accident were engaged in razing and tearing away the debris accumulated by reason of a fire in the Brown & Sehler building located at the corner of Front street and Bridge street in this city.  The Brown & Sehler Company owned the building which was destroyed by fire the 15th day of January, 1915, and had at the time in question employed Hoertz & Son to do the work in which they were engaged when this accident took place.

"On the first day of February, 1915, at the request of Hoertz & Son, Golden & Boter sent teams and teamsters to assist in the work of carrying away the debris. One of these teamsters was John Mellema.  While so engaged, Mellema was killed, was instantly killed by the falling of a wall.  His widow presented a claim for compensation from Golden & Boter under the workmen's compensation act of Michigan.  The industrial accident board awarded her $6.05 per week for the period of three hundred weeks from the first of February, 1915, the time of the accident.  Under this award, Golden & Boter, by the Zurich General Accident & Liability Insurance Company, paid the sum of a thousand dollars,  *  *  *  and to recover this amount so paid, the plaintiffs have brought this suit. They claim that the accident was caused by the negligence of the defendants in failing to provide a reasonably safe place in which Mr. Mellema could do his work.  That the walls were dangerous and should have been razed or braced before the men were allowed to work near them.

"The defendants deny that they, or either of them, were negligent, as the plaintiff claims.  They deny that the wall which fell was dangerous or defective in any manner.  They say that they examined it and found no defects.  That after the fire the premises had been examined by the fire department and by Mr. Davidson, the building inspector of Grand Rapids, and that a part of the wall in question had been taken down by the firemen under Mr. Davidson's direction, and that the defendants had no reason to believe that the portion that was left was in any way defective or unsafe.  Defendants say that they used their best judgment in an effort to determine the safety of the

wall, and that so far as a careful inspection of the wall would show, it appeared to be reasonably safe; that they used every reasonable means to make a place where the workmen were employed reasonably safe, and that the wall did not fall because it was defective or weak or unsafe, but because of an unusual and violent windstorm. Defendants therefore say that they were not guilty of the negligence as claimed by the plaintiff."

The trial judge then gave the jury an elaborate charge as to the law he deemed applicable to the various phases of the case which charge takes up 12 pages of the printed record, and includes 8 carefully prepared written requests to charge, offered on the part of the defendants.

The jury returned a verdict in favor of the plaintiff in the sum of $1,046.65. The case is brought here by writ of error.

Counsel say the court erred in not directing a verdict for the defendants and in not granting defendants' motion for a new trial and motion for judgment in their favor, claiming there had been an election of remedies. We quote from the brief:

"We are not unmindful of the fact that this court has considered section 15, part 3, of the workmen's compensation law, so-called, in the case of *Grand Rapids Lumber Co.* v. *Blair* [190 Mich. 518]. In that case however, the employee was injured but not killed, and he elected to proceed under the workmen's compensation law against his employer and recovery was had against the employer as authorized by the act. This court also had this section before it in *Albrecht Co.* v. *Iron Works* [200 Mich. 109]. This also was a case where the employee was injured and received compensation from his employer. In neither case was there any question as to who was the employer.

"In this case, Mellema, the employee, was not alive to make his election. The widow, a dependent mentioned under section 6 [part 2], of the act, recovered as a dependent. Entirely independent of the question of the constitutionality of section 15 [part 3], of the

act, which will be later considered in this brief, the defendants contend that section 15 gives no authority to maintain this action. If Mellema had been injured only, instead of death resulting from the accident, he would have the right of electing to proceed against any person or corporation liable, and had he done so, he would have waived his right to compensation. Nothing appears in this act that authorizes his personal representatives or any other person or persons to make such an election for him. The law makes no provision and provides no method of procedure for recovery, and it is quite probable· that the legislature foresaw the difficulties that might arise in cases similar to the case at bar and for that reason intentionally omitted attempting to outline any such procedure."

Mrs. Mellema is not interested in the present litigation. It is authorized in express terms by section 15, part 3, of Act No. 10, of the Public Acts of 1912, Extra Session (2 Comp. Laws 1915, § 5468), as construed in *Albrecht Co.* v. *Iron Works*, 200 Mich. 109; *Vereeke* v. *City of Grand Rapids*, 203 Mich. 85; *Naert* v. *Telegraph Co.*, 206 Mich. 68.

Counsel also claim the court erred in not granting defendants' motion for a directed verdict and in not granting defendants' motion for a new trial on the theory that Mr. Mellema was not an employee of Golden & Boter. We think this contention is disposed of by the undisputed testimony that Golden & Boter hired him and paid him and put him in charge of one of their teams, harness, and wagon, and while they in turn sent him and his outfit to do the work for Brown & Sehler, through an arrangement with Hoertz & Son to work by the day, he was all the while in the employ of Golden & Boter. See *Joslin* v. *Grand Rapids Ice Co.*, 50 Mich. 516 (45 Am. Rep. 54) ; *Janik* v. *Ford Motor Co.*, 180 Mich. 563 (52 L. R. A. [N. S.] 294, Ann. Cas. 1916A, 669).

It is urged that Mr. Mellema assumed the risk. If he was in the employ of Golden & Boter, as we have

just found, the doctrine of assumed risk would not apply.

Counsel say a verdict should have been directed in favor of the defendants because the evidence in the case fails to establish any negligence on their part, and great stress is laid by counsel upon the claim that they did not know that the firemen had rocked the wall when they pushed some of them over. There had been a very disastrous fire. Some of the walls had fallen, making a removal of the debris necessary. There would have been no difficulty if the inquiry had been made in learning just what tests had been made by the building inspector and the police department to determine the safety of the walls. It is a pertinent inquiry as to whether a man of ordinary prudence would not have made inquiries of the building inspector and the fire marshal as to what tests had been made. There is testimony to the effect that the building inspector told one of the defendants that part of the wall which fell should come down.

Some of the testimony of John Sehler is illuminating. We quote:

"After the fire I had charge of looking after the insurance and letting contracts for clearing the debris and saving salvage in behalf of Brown & Sehler. The buildings were insured. Mr. William Hoertz represented us in figuring the loss on the building. The loss was adjusted on Wednesday of the last week of January. We then took steps to clear up the site and get out the salvage. I let the contract with Hoertz & Son on Saturday. I commenced considering that matter the next day after the insurance was adjusted. I telephoned Mr. Hoertz Friday evening after adjusting the insurance on Wednesday; they began work Monday morning. * * *

"*Recross-examination:* From January 15th, the date of the fire, to January 26th, when the insurance was adjusted, I didn't do anything with reference to protecting the walls, except to call Mr. Davidson to come over and talk about the building. I did not call

any one else in consultation during that time except Mr. Hoertz with reference to the insurance. I talked with him about the walls but not as to what should be done to make them safe.

"*Q.* Did he tell you that some of those walls must come down?

"*A.* Saying in regard to the new building, yes.

"*Q.* And you received insurance for the walls that must come down, did you not?

"*A.* I expect so.

"*Q.* And in that insurance that you received was there something for this north wall?

"*A.* How is that? Along with the rest, sure.

"*Q.* Along with the rest. (Showing picture.) Do you know whether in the insurance that you received that this wall was included, this part that is still standing?

"*A.* I couldn't separate it.

"*Q.* You don't know, but you do know that there was taken into consideration the fact that those walls could not be used again and you received insurance upon them?

"*A.* We had a certain amount of insurance and we received that, and that was on the whole building.

"*Q.* And the walls were taken into consideration, were they not?

"*A.* Yes."

When it is stated that the witness was a member of the firm of Brown & Sehler and that William Hoertz was a member of the firm of Hoertz & Son we think it cannot be said there was no proof of negligence.

The defendants contend that aside from all other elements of this case, the court should have directed a verdict on the ground that the accident was the result of unforeseen conditions and comes within the rule as an act of God, because of the unusually high wind,—citing authorities.

The court charged the jury:

"Now if you find that the sole cause of the falling of the wall was an extraordinary wind storm, such a wind storm as our experience in this locality would not lead us to anticipate, your verdict should be for the

defendants, a verdict of no cause of action, for the falling of the wall from such a cause would be what is termed an act of God. I am going to repeat that to you again so that we will make no mistake about your getting it. If you find that the sole cause of the falling of the wall was an extraordinary wind storm, such a wind storm as our experience in this locality would not lead us to anticipate, your verdict should be for the defendants, a verdict of no cause of action, because the defendants would not be required by the law to guard against such an extraordinary storm as I have just been speaking of, for the falling of the wall from such a cause would be what is termed the act of God. By the term 'act of God' is meant those events and accidents which proceed from natural causes and cannot be anticipated and provided against, such as unprecedented storms, or freshets, lightning, earthquakes, etc. For a loss occasioned by the act of God, as I have defined it, the defendants would not be responsible. If the sole cause of the falling of the wall was an act of God, I said the plaintiff cannot recover."

The jury was charged in great detail upon this subject.

Counsel query, "Was that part of section 15, of part 3 of Act No. 10 of the Public Acts of 1912, Extra Session, relied upon by the plaintiff in this case, unconstitutional because of not being within the scope of the title of said act." The title of the act is quoted and counsel say:

"A careful examination of the title to the act in question shows no reference in any way to a third person. The act is clearly and distinctly, so far as its title is concerned one pertaining to the relationship of master and servant. It will be observed that leaving out section 15 of part 3, third persons are in no sense and in no way made parties to the act, and none of the obligations, rights or remedies that it imposes apply in any way to third persons. It will be further observed that section 15 creates a new obligation on the part of third persons. It creates a new basis or an entirely different basis as a measure of damage for which the third party is required to respond, and the

fact that in most instances it might be more favorable than in an action at law for negligence cannot operate to validate the law."

In *Mackin* v. *Detroit-Timkin Axle Co.*, 187 Mich. 8, Justice STEERE had under consideration this very subject. We quote from his opinion:

"The particulars pointed out in which it is claimed the act contains provisions not referred to or comprehended in the title are that it repeals an existing statute relative to contracts with attorneys for services, creates a right of action against a third party by the employer of the injured, subrogating the employer to the rights of the employee, and requires the injured employee to seek compensation from an insurance company, instead of his employer. The last objection, we think, is disposed of in *Barnard* v. *McLeod*, 114 Mich. 73, where section 16 of the mechanic's lien law (Act No. 179, Pub. Acts 1891), providing for subrogation under certain circumstances, was sustained, although the title of the act did not in terms give notice of such a provision, and the constitutionality of the act was assailed on the ground of defective title, and the court said:

" 'We think there is no merit in the constitutional question raised.'

"If there be any repeal of the statute with reference to attorney's contracts, it is by implication only. The portion of the act questioned provides:

" 'The fees and the payment thereof of all attorneys and physicians for services under this act shall be subject to the approval of the industrial accident board.'

"This is but a detail of method for ascertaining and insuring in the first instance full payment to the injured, is germane to the act, and its repealing effect by implication is a matter of construction. An examination of sections 6 and 14 [part 3], of the act clearly indicates that the employee is not relegated to seek compensation for his injuries to an insurance company, but liability under the act is clearly upon the employer, and the provisions for insurance are in security and aid of payment by him.

"Details in many respects similar to these, and numerous others not specifically enumerated in the titles are to be found in the Wisconsin, Massachusetts, Minnesota, Ohio, Illinois, New Jersey, California, and Montana employers' compensation acts, the general constitutionality of which has been sustained; and, while it does not appear that these exact objections were raised and passed upon, those acts and the opinions sustaining them are significant and persuasive of the natural and necessary scope of this class of legislation in order to accomplish the object sought, as declared in a general title. We think the objections urged to the title of this act are not tenable under the decisions of this and other courts."

We have discussed the most important assignments of error. We have carefully considered the others but cannot discuss them in detail without making this opinion unduly long. We find no reversible error.

The judgment is affirmed, with costs to the plaintiff.

STEERE, BROOKE, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred.

Justice KUHN took no part in this decision.