## E. T. ANDERSON v. HAROLD GRAY.[1]

December 1, 1939.

No. 32,162.

*Oscar S. Wilson* and *Charles E. Carlson,* for appellant.
*Freeman & King* and *Charles P. Le Richeux,* for respondent.

HOLT, JUSTICE.

Action for death by wrongful act. Verdict for defendant, and plaintiff appeals from the order denying a new trial.

Only two assignments of error need be considered, the one submitting the issue of decedent's contributory negligence to the jury, the other submitting to the jury whether or not defendant met an emergency which might excuse him from the charge of negligence if when so confronted he did not select the best way

[1]Reported in 288 N. W. 704.

out of the danger. To pass upon these alleged errors it is necessary to set out the situation as disclosed by the record.

The village of Milan is situated on the tarvia highway No. 59 passing in a northwesterly direction from Montevideo to Appleton. In the southerly outskirts of the village there is an east-and-west graveled highway, No. 40, which intersects No. 59 and, 100 feet easterly of the intersection, crosses a railroad track, there paralleling No. 59. Main street, running north and south through the village, leads into No. 40 about two blocks west of No. 59. The village owns a fire truck and has an arrangement with a neighboring town to the east to render aid in case of fire. On October 16, 1937, at about four o'clock in the afternoon, an alarm of fire was turned in from a home east of the village. The truck started from the firehouse, picked up the firemen as they came running in response to the alarm, turned into Main street, thence south about two blocks to No. 40, thence east thereon toward No. 59. The fire truck, except the rear end, had passed the tarvia part of No. 59 when defendant's automobile struck the rear right wheel of the fire truck and threw it in the north ditch of No. 40. Plaintiff's intestate, who was standing on the left side of the rear step or platform of the truck, was thrown some 30 feet northerly of the truck, sustaining mortal injuries. There is some conflict in the evidence as to whether snow was falling to interfere with visibility. All agree there was some mist or rain. The fire truck had two red lights lit on the upper front corners as it was being driven, and one fireman seated next to the driver sounding the siren. There is evidence that the siren was heard a distance of two miles. Defendant coming on No. 59 from Minneapolis, as he was approaching No. 40, estimates that he drove at a speed of from 30 to 40 miles per hour just prior to the collision. The windows of his car were closed. His radio in the car was playing an orchestral piece. His hearing in one ear was somewhat defective. He neither saw nor heard the fire truck until 70 or 80 feet from the intersection. He testified that as quickly as he could react to the danger he saw he applied the brake and turned to the right shoulder, but that the wet condition caused the car

to skid and strike the right rear wheel of the truck with the result stated. The fire truck was 21 feet long and weighed 9,600 pounds without the men on. At this time nine men were on the truck. No witness placed the speed of the truck in approaching or passing No. 59 at more than 20 miles an hour. There is no question but that decedent, one of the firemen, properly took his position on the rear step or platform. It is common knowledge that this is done. He did not control the driving. He knew there was an experienced person in the driver's seat, the siren was sounding, the fire chief was in front with a good view as to traffic on No. 59 and the railroad crossing. The evidence is clear that decedent did not fall off because of failure to hold onto the handrail. He was tossed off when the truck was struck so forcibly as to throw the rear end thereof in the air and completely overturn the whole truck in the north ditch of No. 40. There is not the slightest basis in the evidence from which an inference of negligence or want of due care on the part of decedent could be drawn. Firemen riding in a fire truck to a fire have no enclosed or protected place. The court erred in submitting the issue of decedent's contributory negligence to the jury. Such error necessitates a reversal. Vukos v. Duluth St. Ry. Co. 173 Minn. 237, 217 N. W. 125, and the authorities therein cited.

We also conclude that there was no evidence justifying this instruction, excepted to when given, and assigned as ground for a new trial:

"Now, there is one other question that has been raised, and that is the question of whether or not Harold Gray met with an emergency. That is for you to determine from the facts after I have told you what constitutes emergency and what relieves one from responsibility if they have faced an emergency. Where a person is placed in a position of danger by the negligence of another and suddenly is confronted by an imminent peril and makes an attempt to escape he is not chargeable with negligence if, in his excitement and confusion, he in fact places himself in a position of greater peril. But this rule does not apply where a person's

own negligence has placed him in the position of danger. If he is in the place of danger as a result of his own negligence he cannot invoke this rule to escape the consequences of such negligence."

Whether the rule stated in the sentence beginning, "Where a person," etc. is technically correct, we need not decide. Usually it is a plaintiff suing for damages who invokes the instruction where the defendant pleads contributory negligence. In the case at bar the court permitted its application to defendant. There is no suggestion in the evidence that any negligence or want of due care on the part of decedent or on the part of anyone upon the fire truck created or contributed to the creation of any emergency or danger which confronted defendant. The fire truck was going to a fire. As such, by 3 Mason Minn. St. 1938 Supp. § 2720-151(4), it was an authorized emergency vehicle, and § 2720-200(a) thereof provides:

"Upon the immediate approach of an authorized emergency vehicle, when the driver is giving audible signal by siren, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer."

The siren was sounded so that it could be heard at a distance of two miles. Defendant and his wife testified to not hearing it; but that the windows of defendant's car were closed and the radio therein was reproducing an orchestral piece was no fault of anyone but defendant. When the fire truck driver and the chief were 150 feet west of the intersection they saw defendant's car more than 400 feet south of the intersection. That defendant did not see or hear the fire truck until he was within 80 feet of the intersection cannot be traced to the fault or negligence of any other person or thing than defendant. He testified that notwithstanding the snow or mist he could see a mile ahead. The force

with which defendant's car struck and overturned the heavy truck demonstrates that it was coming up to the intersection at terrific speed. It is only when a defendant has been placed in imminent peril by some other person's negligence that the emergency instruction may be given—not when he confronts danger by reason of his own conduct. Under the evidence defendant was not entitled to the instruction given.

Defendant's counsel contends that the evidence does not warrant a finding that his negligence was the proximate cause of decedent's injuries and death; hence the errors referred to should not reverse. We are clear that the issue of defendant's negligence is for the jury.

The order is reversed.