# MELVIN SWANSON v. HAROLD LaFONTAINE.[1]

February 27, 1953.

No. 35,890.

[1]Reported in 57 N. W. (2d) 262.

*Sullivan, Stringer, Donnelly and Sharood* and *David R. Roberts,* for appellant.

*Richards, Janes, Hoke, Montgomery & Cobb* and *Melvin D. Heckt,* for respondent.

DELL, JUSTICE.

This is an appeal from an order denying plaintiff's motion for a new trial in a personal injury action after a jury verdict for the defendant.

At the southeast corner of the intersection of Fifth and Market streets in St. Paul, and adjacent on the west to the St. Paul Hotel, is the St. Paul Hotel parking lot. A sidewalk on Market street runs along the westerly side of the lot and a sidewalk on Fifth street along its northerly side. A driveway extends into the parking lot in a southerly direction across the Fifth street sidewalk sloping up from the level of Fifth street and affording automobiles access to the lot from said street.[2] Cars are parked on the lot facing easterly in two rows, one row next to and parallel with Market street and the second row also parallel to Market street and to the east of the first row of cars.

On October 10, 1949, at approximately eleven o'clock in the forenoon, defendant drove his 1939 Dodge automobile onto the parking lot and left it with the attendant. The car was parked by the attendant in the second row, the fourth car south from Fifth street,

---

[2]The entrance to the parking lot is now by driveway from Market street.

with its front end facing east. Defendant left the lot and did not return until about six o'clock that evening.

It was an extremely windy day with strong gusts of wind. The wind blew from the south. The weather bureau airport station at Holman Field, St. Paul, reported a wind velocity of 50 miles per hour with gusts to 77 miles per hour at 11:28 p. m.; 50 miles per hour with gusts to 62 miles per hour at 12:28 p. m.; 81 mile-per-hour gust at 12:44 p. m.; and 52 miles per hour with gusts to 82 miles per hour at 1:28 p. m. Paper and other articles were carried by the wind through the air throughout the day. The wind broke a window in the hotel, and the glass fell down on the parking lot. There is other evidence characterizing the day as a very windy one. Defendant testified that the wind blew him off the roof of an apartment building where he was working as a carpenter injuring his ankle and that the purpose of his trip to the parking lot was to enable him to obtain medical care in the Medical Arts building nearby.

The hood of defendant's automobile consisted of two halves joined at the top center with a hinge extending lengthwise from the radiator to the body, each half of the hood opening independently of the other. The hinge was fastened by a clamp bolted to the radiator and was fastened to the body at the other end in the same fashion. There were two latches attached to the side shield on either side, which latches by insertion into hooks attached to the hood were used to fasten and lock the side shield and hood to the body. This was done by means of a handle on either side of the shield, the handles being plainly visible on the outside of the automobile. When the handle was in an upright position, the hood was unlatched and loose except for the hinge at the top. When the handle was in a crosswise position, the hood was latched and fastened to the body. When the latches were not fastened, there was an opening of about one inch between the body and the lower part of the shield, likewise plainly visible on the outside of the automobile. When the hood was properly fastened to the body and force was applied to it from

below, the force would tend to tighten the locking mechanism and hold the hood more firmly in place.

Shortly after twelve o'clock noon on October 10 plaintiff was walking in an easterly direction on the sidewalk on Fifth street adjacent to the parking lot. He was on his way to his place of employment, the Williams optical shop located on St. Peter street near the St. Paul Hotel. When on the driveway leading across the sidewalk from the parking lot to Fifth street, or near its west end, he observed the hood of the defendant's automobile flying toward him through the air being carried by the high wind. He kept his eyes on the hood and "ducked" or stooped to avoid it and in so doing fell down onto the driveway receiving injuries to his leg which resulted in several months of hospitalization. At the time of the trial he had not yet returned to work. The hood did not strike him but came to rest on the sidewalk a foot or two from his body. There was no direct testimony showing the manner in which the hood was blown from defendant's automobile.

The court submitted to the jury the questions of whether the defendant was negligent in not having the hood of his car fastened or clamped down and whether such negligence if found to exist either caused alone or contributed with the wind to cause plaintiff's injuries. There was a verdict for the defendant and plaintiff appealed.

■ At the outset we are confronted with the claim of the defendant that there was no actionable negligence proved against him. He claims that the court erred in not directing a verdict in his behalf. This claim if true would end the appeal in favor of the defendant. Viewing the evidence in the light most favorable to the plaintiff, as we must do on this issue, we think it permitted an inference (1) that the hood was unlatched and the defendant knew or in the exercise of due care should have known that it was unlatched, or (2) that one of the latches had previously been bent preventing the hood from being securely fastened and the defendant knew or in the exercise of due care should have known of that condition. We think it could be found that, as a result of one or the

other of these conditions, the wind was able to get at the hood causing it to tear the hinge loose from the radiator and body and thus permitting it to be carried through the air by the wind. The attendants at the parking lot according to the uncontradicted testimony did not raise or tamper with the hood. Defendant testified that it was not his practice to see whether the hood was fastened down and that he relied on his gas and oil service attendant to look after that for him, but that is no defense. Defendant admitted that, if the hood was not latched and the handle on the side shield was up, that condition would be perfectly obvious to anyone. He also admitted that, if the hood was unlatched, he appreciated that that condition would involve danger.

To leave an automobile parked in a highly congested area with its hood unlatched or insecurely latched in a high wind under the circumstances here shown with the danger attendant to others thereby would justify a finding of negligence. We hold that the issue was rightfully submitted to the jury.

■ Plaintiff assigns error in the submission of the issue of his contributory negligence to the jury. The record shows these facts: Plaintiff was walking easterly on the Fifth street sidewalk adjacent to the parking lot on his way back to work from lunch. He was looking ahead and along the sidewalk. Suddenly and without warning, he observed the flying automobile hood coming toward him in the air from his right about ten feet away. In the presence of this danger he "ducked" or stooped in an effort to get out of the way. These movements were consistent with the reactions of a normal person. That plaintiff was justified in his apprehension of danger is fortified by the fact that when the hood came to rest it was on the sidewalk only a foot or two from where he lay. In his effort to avoid the flying hood, he fell on the driveway leading from the parking lot to Fifth street and sustained the injuries for which this action was instituted.

Plaintiff's testimony was corroborated by the testimony of William S. Rasmussen, a police officer of the city of St. Paul. Mr.

Rasmussen was driving an emergency car west on Fifth street taking a woman to the Ancker hospital. He testified as follows:

"Q. Now, did you see something of an automobile hood flying in the air as you were passing by the St. Paul Hotel?

"A. Yes. Just as we were going by the parking lot I saw this hood come flying through the air and I thought that it struck him and he went down on the sidewalk right by the driveway and he attempted to get up and he collapsed again and that was the part that I saw. We could not stop because we already had the car full.

"Q. Whereabouts was your automobile at the time you saw him go down with reference to him, was it east of him?

"A. I was looking at an angle. I was looking west. I was behind him.

"Q. So you were east of him?

"A. Yes.

"Q. Looking west, in the direction you were going?

"A. Yes.

"Q. Where was the man with reference to the driveway going into the parking lot of the St. Paul Hotel?

"A. Well, it was all over in a second. I would say he was closer to the hotel side of the driveway, a little past the middle of it probably.

"Q. He was in the driveway?

"A. Yes.

"Q. A little past the middle. In what direction was the man walking?

"A. He was headed east."

This witness was not cross-examined nor was his testimony contradicted or impeached. It stands unchallenged.

John Lee, the attendant in charge of the St. Paul Hotel parking lot, testified that when plaintiff fell he was on the driveway, near the west end of it, and that there was no building there. His testimony also stands uncontradicted and unimpeached.

466

Plaintiff's hospital record at the Ancker hospital was received in evidence. It contained the following entry:

"Patient was trying to dodge an automobile hood in a wind storm. The wind made him run and in trying to stop he threw right leg against wall and all of a sudden his pain was severe and patient could not walk."

The witness Charles L. Claxton, the hospital employe who produced the record was unable to say who made the entry or who gave the information that was written down. The plaintiff on cross-examination concerning this entry testified as follows: ·

"Q. When you were at the hospital did you tell the hospital authorities that the wind made you run?

"A. Well I couldn't say what I told them.

"Q. And did you say at the hospital that not only did the wind make you run, but in trying to stop you braced your right leg against the wall?

"A. No, I didn't say that. I couldn't say for sure though.

"Q. Did you brace your right leg against the wall at any time?

"A. No. I would say I didn't.

"Q. Where they got that information at the hospital you don't know?

"A. I don't know."

No effort was made by defendant to follow this matter up. Who furnished the information, who made the entry, and what the circumstances were at the time is all left unanswered. The entry stands alone, unidentified by anyone. Moreover the entry is impeached by the physical facts and other uncontradicted evidence disclosed by the record. The entry says "he threw right leg against wall." The record shows that there was no wall near the driveway where all agree the defendant fell. The closest wall was that of the St. Paul Hotel several feet away. The entry says "The wind made him run," yet all the evidence in the case shows that plaintiff was walking at the time. This entry, standing alone without further identification and impeached as it is by the physical facts and the

other uncontradicted evidence in the case, is insufficient to raise an issue.

Where a pedestrian walking upon a sidewalk in the usual manner as the evidence here shows is suddenly placed in a position of imminent peril through no fault of his own, he cannot be charged with contributory negligence because he momentarily withdraws his attention from the sidewalk and placing his eyes on the object creating the danger falls while stooping in order to avoid injury to himself. This is a case for the application of the rule stated in Johnson v. Townsend, 195 Minn. 107, 110, 261 N. W. 859, 861; and Cosgrove v. McGonagle, 196 Minn. 6, 13, 264 N. W. 134, 138.

There being no evidence of contributory negligence sufficient to create a jury issue, it was error to submit the issue, and there must be a new trial. 5 Dunnell, Dig. & Supp. § 7174; Vukos v. Duluth St. Ry. Co. 173 Minn. 237, 217 N. W. 125; Anderson v. Gray, 206 Minn. 367, 369, 288 N. W. 704, 705.

Because we are remanding for a new trial some additional matters justify comment.

■ The court in its instructions stated: "The high wind that day was an act of God for which the defendant was not liable." This is assigned as error. Whether it was error to so instruct we need not determine, since the instruction to the jury as to when and under what circumstances the plaintiff was entitled to recover from the defendant was right. The charge stated:

"To entitle the plaintiff, that is Swanson, to recover a verdict against defendant La Fontaine, the burden is upon the plaintiff to prove by a fair preponderance of the evidence, first, that defendant was negligent in not having the hood of his car fastened or clamped down; second, that such negligence directly and proximately caused or directly and proximately contributed with the wind, an act of God, to cause his injuries."

The jury was not told that the high wind, which the court instructed was an act of God, absolved the defendant from liability. To the contrary it was told that, if the defendant's negligence directly and proximately contributed with the wind, an act of God,

to cause plaintiff's injuries, plaintiff was entitled to recover. This is a correct general statement of the law. Justice Magney, quoting with approval from 4 Dunnell, Dig. § 7007, in the case of Sauer v. Rural Co-op. Power Assn. 225 Minn. 356, 361, 31 N. W. (2d) 15, 17, stated:

"* * * 'if damage is caused by the concurrent force of defendant's negligence and some other cause for which he is not responsible, including an act of God, he is nevertheless liable if his negligence is one of the proximate causes of the injury complained of, even though, under the particular circumstances, he was not bound to anticipate the interference of the intervening force which concurred with his own.' "

See, also, Moore v. Townsend, 76 Minn. 64, 78 N. W. 880; Bibb Broom Corn Co. v. Atchison, T. & S. F. Ry. Co. 94 Minn. 269, 102 N. W. 709, 69 L. R. A. 509; Palyo v. N. P. Ry. Co. 144 Minn. 398, 402, 175 N. W. 687, 689; Brown v. Murphy Transfer & Storage Co. 190 Minn. 81, 85, 251 N. W. 5, 7; Anderson v. M. St. P. & S. S. M. Ry. Co. 146 Minn. 430, 179 N. W. 45; Leebens v. The Baker Co. 233 Minn. 119, 122, 45 N. W. (2d) 791, 793; 38 Am. Jur., Negligence, § 65.

Every strong wind cannot be legally termed an act of God. An act of God, as related to cases of injurious negligence, is one against which ordinary skill and foresight is not expected to provide. Sometimes the issue is for the jury. Anderson v. M. St. P. & S. S. M. Ry. Co. 146 Minn. 430, 438, 179 N. W. 45, 48; Harber v. Pennsylvania R. Co. 56 Pa. Super. 59, 64; Laritza v. Pa. Power Co. 106 Pa. Super. 587, 596, 162 A. 333, 336; Golden & Boter Transfer Co. v. Brown & Sehler Co. 209 Mich. 503, 510, 177 N. W. 202, 204; 1 C. J. S. 923.

■ Plaintiff called the witness George C. Schultz who testified that he was a tester, foreman, and supervisor of repairs on Chrysler-made automobiles, including Dodge automobiles, with experience of more than 24 years. Plaintiff then endeavored to prove by the witness that it would be impossible for the wind to remove the hood from a 1939 Dodge automobile, such as the one involved here, without damaging the locking attachments at the lower end of the hood if the hood was properly latched or fastened. An objection of lack

of foundation was sustained. Whether a sufficient foundation has been laid to qualify a witness as an expert ordinarily is a question for the trial court, but the matter did not end there. On inquiry by plaintiff's counsel, the court ruled that the offer did not embody a proper subject of expert testimony. Since the testimony would likely have aided the jury in determining the truth of the fact issues involved here, we think that this type of testimony was admissible. Lestico v. Kuehner, 204 Minn. 125, 283 N. W. 122; Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649.

■ There was no error in the court's refusal to give plaintiff's requested instructions. Except as we have noted in this opinion, the charge covering the law of the case was full, complete, fair, and accurate; and that is all that plaintiff was entitled to under the law. As a practical matter it is usually better for the trial court, after due consideration of the requested instructions, to charge the jury in an orderly, systematic, and consecutive manner in a general charge upon the whole law of the case rather than to run the risk of confusing the jury or overemphasizing one side of the case, as is often done, by giving requested instructions submitted by counsel. Though the requested instructions may be correct, they frequently present a partial, argumentative, and misleading view of the law. Where the law of the case is fully, fairly, and correctly stated, that is all that is required. A trial court is vested with a wide discretion in the matter. 6 Dunnell, Dig & Supp. §§ 9777, 9778; Davidson v. St. P. M. & M. Ry. Co. 34 Minn. 51, 56, 24 N. W. 324, 327; Blanton v. N. P. Ry. Co. 215 Minn. 442, 10 N. W. (2) 382; O'Neill v. Minneapolis St. Ry. Co. 213 Minn. 514, 7 N. W. (2d) 665.

Reversed and new trial granted.