*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

AARON PEARCE, CHRISTINE PEARCE, also known as CHRISTIE PEARCE, CARL LATORA, and DIAN LATORA,

UNPUBLISHED
March 23, 2023

Plaintiffs/Counterdefendants-
Appellants,

and

ANDY MCCLISH, LORI HOWARD and STEVE HOWARD,

Plaintiffs/Counterdefendants,

v

No.   359983
Kalamazoo Circuit Court
LC No.   2019-000371-CE

PATRICIA A. S. CROWLEY, also known as FORMER KALAMAZOO COUNTY DRAIN COMMISSIONER,

Defendant/Counterplaintiff,

and

JASON WIERSMA, also known as KALAMAZOO COUNTY DRAIN COMMISSIONER, and PINE ISLAND LAKE #196 DRAIN DRAINAGE DISTRICT,

Defendants/Counterplaintiffs-
Appellees.

Before:  K. F. KELLY, P.J., and BOONSTRA and REDFORD, JJ.

PER CURIAM.

-1-

Plaintiffs Aaron Pearce, Christie Pearce, Carl Latora, and Dian Latora appeal by right the trial court's order granting summary disposition under MCR 2.116(C)(10) in favor of defendants Jason Wiersma and the Pine Island Lake #196 Drain Drainage District.[1] Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case stems from an issue that began in approximately October 2017, when properties next to an infiltration basin designed to collect stormwater runoff began to experience flooding along the basin boundary. The basin and drain pipes leading into it appeared to work as designed for many years until that time.

In February 2018, one or more owners of properties adjoining the basin notified defendants about the basin flooding. Initially, defendants did not do anything to prevent flooding in the basin other than providing Aaron with a brochure about plants suitable for wet areas. In July 2018, property owners submitted a petition to defendants requesting that something be done about the flooding from the basin.

The flooding of properties next to the basin was still present as of September 2018. In October and November 2018, defendants performed work to expand the basin within the basin easement, "digging and filling in some areas, as well as tree removal to create an area for the water to go." However, that work did not alleviate the flooding issue. In February 2019, a Board of Determination met and found that remedial steps were necessary to address the basin flooding, and subsequently constructed a concrete berm as a barrier between the basin and the adjacent properties. That berm at least partially alleviated the flooding onto plaintiffs' properties. Meanwhile, water rose to levels above some plaintiffs' swimming pools, causing damage to the walls and liners. Water also began accumulating in plaintiffs' basements at various times.

In August 2019, plaintiffs filed a complaint against defendants, alleging several counts: (1) nuisance resulting from the improper increase of the easement's burden on plaintiffs' properties; (2) trespass from unauthorized occupancy of plaintiffs' properties by the water collected in the basin; (3) inverse condemnation under state law; (4) inverse condemnation under federal law; (5) negligence under the "Sewer System Disposal Event (SSDE) Exception to Governmental Immunity" under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*; and (6) gross negligence. Defendants counterclaimed, alleging that various improvements to plaintiffs' properties, including swimming pools and retaining walls, were located on defendants' easement and hindered access to the basin.

---

[1] Original plaintiffs Lori Howard, Steve Howard, and Andy McClish ended their participation in the case before this appeal. Defendant Patricia A. S. Crowley, the drain commissioner at the time the lawsuit was filed, did not seek reelection; therefore, the new county drain commissioner, Jason Wiersma, replaced her in the litigation.

In March 2021, defendants moved the trial court for summary disposition dismissing plaintiffs' complaints and granting relief under their counterclaim.[2] Defendants argued that the problem regarding the basin was not its ability to accommodate stormwater runoff from its drainage area, but with historically high groundwater levels that prevented the basin from doing what it was designed to do: allow stormwater runoff that collected in the basin to soak into the ground. The trial court ultimately concluded that defendants were entitled to summary disposition on plaintiffs' negligence claim under the SSDE exception because there was no genuine issue of material fact that the unusually high water was shown to be from historical groundwater levels.[3]

Defendants subsequently renewed their motion for summary disposition, noting that the parties and trial court neglected to address the causation element as it related to plaintiffs' claims of nuisance, trespass, and inverse condemnation. Defendants again argued that the flooding problem arose from groundwater levels and not storm runoff or a defective basin; therefore, the nuisance and trespass created by the water could not have been set into motion by the government. Similarly, plaintiffs could not prove that the damage was caused as a result of any action by the Drainage District as it related specifically to stormwater runoff.

The trial court agreed, finding that the basin worked properly for many years and that the problem was clearly the result of "a combination of higher groundwater levels with higher than normal precipitation and obviously runoff at that particular point." The court granted summary disposition in defendants' favor regarding plaintiffs' claims of nuisance, trespass, and inverse condemnation.

Plaintiffs moved for leave to amend their complaint, arguing that the amendment would address defendants' failure to maintain or repair the basin once the flooding subsided, as well as removing the burdens that the protective measures imposed on their properties, such as the concrete berm that was placed in response to flooding and damage caused by the berm and heavy machinery. The proposed amended complaint would have also added claims that defendants breached their duty to maintain the basin easement and that the emergency repairs unreasonably burdened plaintiffs' servient estates.

The trial court found that plaintiffs raised new, viable issues related to easements and acknowledged that amendments should be freely allowed for judicial efficiency. However, it denied plaintiffs' motion to amend because it would unfairly prejudice defendants. This appeal followed.

## II. PROCEDURAL ERROR

On appeal, plaintiffs first argue that the trial court abused its discretion when it granted defendants' second motion for summary disposition without demonstrating palpable error. We disagree.

---

[2] The counterclaim was eventually dismissed as to all plaintiffs.

[3] The trial court also dismissed plaintiffs' claim of gross negligence without objection from the parties.

## A. STANDARD OF REVIEW

"[T]rial courts possess the inherent authority . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). "An exercise of the court's 'inherent power' may be disturbed only upon a finding that there has been a clear abuse of discretion." *Baynesan v Wayne State Univ*, 316 Mich App 643, 651; 894 NW2d 102 (2016) (quotation marks and citation omitted). "An abuse of discretion occurs when a court chooses an outcome outside the range of principled outcomes." *Id*.

## B. ANALYSIS

MCR 2.116 governs summary disposition proceedings in Michigan. With respect to timing of motions for summary disposition, "[a] party may move for dismissal of or judgment on all or part of a claim in accordance with this rule." MCR 2.116(B)(1). A motion filed under MCR 2.116 "may be filed at any time consistent with subrule (D) and subrule (G)(1) . . . ." MCR 2.116(B)(2).

MCR 2.116(D)(4), in turn, states:

> The grounds listed in subrule (C)(8), (9), and (10) may be raised at any time, unless a period in which to file dispositive motions is established under a scheduling order entered pursuant to MCR 2.401. It is within the trial court's discretion to allow a motion filed under this subsection to be considered if the motion is filed after such period.

Further, "a party may file more than one motion" as long as the additional motion is not filed in bad faith. MCR 2.116(E)(3); MCR 2.116(F); *Limbach v Oakland Co Rd Comm*, 226 Mich App 389, 395; 573 NW2d 336 (1997) (stating that "MCR 2.116(E)(3) allows a party to file more than one motion for summary disposition").

Parties may also file a motion for rehearing of a motion that the party believes was resolved erroneously. MCR 2.119(F). That rule, regarding motions for rehearing and reconsideration, states:

> (1) Unless another rule provides a different procedure for reconsideration of a decision (see, e.g., MCR 2.604[A], 2.612), a motion for rehearing or reconsideration of the decision on a motion must be served and filed not later than 21 days after entry of an order deciding the motion.
>
> * * *
>
> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [MCR 2.119(F).]

-4-

A trial court has discretion to decline hearing new legal theories on a motion for reconsideration, but it also has the discretion to "give a litigant a second chance even if the motion for reconsideration presents nothing new." *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012). The trial court has "considerable discretion" with regard to granting reconsideration for the sake of correcting mistakes, promoting judicial economy, and minimizing costs. *Sanders v McLaren-Macomb*, 323 Mich App 254, 265-266; 916 NW2d 305 (2018).

Although defendants requested dismissal of all counts in their first motion for summary disposition, the parties focused their arguments on whether plaintiffs could show that the basin was defective under the SSDE exception. The trial court acknowledged this, stating:

> The Defendants, in essence, zero in on that count five to indicate that there is nothing that has been uncovered through the discovery process or any documentation to establish that the infiltration ponds were, in fact, defective either at the time of construction or in their operation and lacking a defect there cannot be a determination that somehow the Commissioner was negligent.

With that in mind, the trial court recognized that its decision did not necessarily invalidate plaintiffs' remaining claims.

Defendants' second motion, labeled and characterized as a "renewed" motion, focused on causation and the remaining counts rather than the dismissed claim. Defendants did not argue in their motion that the trial court committed palpable error by denying dismissal of the remaining counts. The trial court also considered defendants' motion as merely a second motion for summary disposition rather than a motion for reconsideration of the first. Under the court rules, defendant was allowed to bring a second motion for summary disposition in this manner. See MCR 2.116(E)(3).

But even we agreed with plaintiffs that the motion was more properly characterized as a motion for reconsideration, the theme of "considerable discretion" given to trial courts regarding motion practice would suggest that it also had discretion to accept it to maximize judicial economy and minimize costs, despite being filed outside the 21-day window.

Because defendants filed a second or renewed motion and the trial court had discretion to hear it even if it was a motion for reconsideration, the trial court did not abuse its discretion when it granted the motion.

## III. SUMMARY DISPOSITION

Plaintiffs next argue that the trial court erred when it granted summary disposition in favor of defendants because whether the basin was defective and caused the flooding was a genuine issue of material fact for the jury to decide. Further, plaintiffs argue that defendants' groundwater theory should not have been dispositive of the issue because it only illustrated further the basin's defect: its inability to soak in more water. We disagree.

### A. STANDARD OF REVIEW

A trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), as well as decisions regarding governmental immunity, are reviewed de novo. *Willett v Waterford Charter Twp*, 271 Mich App 38, 45; 718 NW2d 386 (2006). "A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of a complaint." *MLive Media Group v Grand Rapids*, 321 Mich App 263, 269; 909 NW2d 282 (2017). "When considering a motion under MCR 2.116(C)(10), the trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Blackwell v Livonia*, 339 Mich App 495, 500-501; 984 NW2d 780 (2021). Further, "[w]hen the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial." *Campbell v Kovich*, 273 Mich App 227, 229; 731 NW2d 112 (2006).

## B. ANALYSIS

The SSDE exception to the GTLA abrogates common-law exceptions to governmental immunity. MCL 691.1417(2); *Willett*, 271 Mich App at 46. Whether a governmental entity responsible for a disposal system is liable for damages after a disposal event depends on whether the plaintiff can show the following:

> (3) If a claimant, including a claimant seeking noneconomic damages, believes that an event caused property damage or physical injury, the claimant may seek compensation for the property damage or physical injury from a governmental agency if the claimant shows that all of the following existed at the time of the event:
>
> (a) The governmental agency was an appropriate governmental agency.
>
> (b) The sewage disposal system had a defect.
>
> (c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.
>
> (d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.
>
> (e) The defect was a substantial proximate cause of the event and the property damage or physical injury.[4] [MCL 691.1417(3).]

All five requirements must be met in order to successfully state a claim under the SSDE exception. *Bosanic v Motz Dev Inc*, 277 Mich App 277, 282; 745 NW2d 513 (2007). No showing of fault is

---

[4] The statute defines "[d]efect" as "a construction, design, maintenance, operation, or repair defect" and defines "[s]ubstantial proximate cause" as "a proximate cause that was 50% or more of the cause of the event and the property damage or physical injury." MCL 691.1416(e) and (*l*).

required to demonstrate a defect in the system. *Willett*, 271 Mich App at 52. There is no dispute that the Drainage District was the appropriate governmental agency.

With respect to the first of the remaining elements—whether the sewage disposal system had a defect—plaintiffs argue that the basin was defective because, even if defendants' groundwater-causation theory was true, it prevented the basin from doing what it was designed to do, i.e., soak stormwater runoff into the ground. In *Willett*, this Court held that a concrete obstruction in a sewer pipe that caused a sewage backup event was a defect, even though it was not placed by the defendant, nor could the defendant have prevented or discovered it through routine maintenance. *Willett*, 271 Mich App at 52. In this case, although defendants had no control over the groundwater, the water presented an impediment to the operation of the basin, particularly after heavy rains. Therefore, as in *Willett*, the outside force, high groundwater, combined with heavy rains, created a question of fact concerning whether the basin contained a defect.

Regarding knowledge of the defect, the parties do not dispute that defendants were made aware of the excess water several months after flooding in the basin began. However, no evidence was provided to show that defendants knew or should have known that groundwater levels would rise to historic highs sufficient to overcome the basin. Plaintiffs argued that it was stormwater from heavy rains and the addition of a second drain pipe that caused the flooding in the basin, but they did not substantiate that claim with any evidence of actual precipitation data for that locality, either during the flooding period or from the 14 years prior, when the basin worked as designed. Meanwhile, defendants presented ample evidence of the regionally-high groundwater levels, which was corroborated by (1) testimony that when defendants twice pumped water out of the basin, it refilled both times within a matter of hours without any significant rainfall, and (2) the allegation in plaintiffs' original complaint that deepening and widening the basin in October 2018 was ineffective in lowering the water levels.

Plaintiffs also assert that defendants did not address and remedy the problem in a reasonable amount of time. The record demonstrates that defendants attempted to help in several ways, although without extreme haste. The first attempt, dredging a larger basin area, arguably would have helped without the high groundwater levels refilling it from below. The first berm, despite being started by contractors then left unfinished, also failed because of erosion. Another step, the crushed-concrete berm, was started and completed just before this lawsuit was filed and worked, at least in part. The record also contained evidence that defendants considered other options even after litigation began and continued after the flooding subsided. Some options were deemed to not be feasible financially because the high cost would unreasonably burden the residents or because they did not believe that the state would grant the permit requests required to undertake the option.

In *Willett*, this Court concluded that the township's $2^1/_2$-hour response time would be deemed by any reasonable jury to be a reasonable response time. In this case, however, although defendants made several attempts to solve the issue, the first arguably meaningful response did not come until several months to a year after being notified of the flooding issue, and months again after the Board of Determination found that work was necessary. Understandably, defendants would have planning and permitting stages to complete before work was conducted. However, no evidence was produced to defend the delay, which reasonable minds could very well find was unreasonable.

-7-

Under the final requirement, plaintiffs were required to show that the defect was the substantial cause of the damage to plaintiffs' properties. As explained earlier, the outside obstruction, the groundwater, combined with heavy rains that the basin was designed to protect from, created a defect even though defendants could not control it and did not cause it. The excess water—the groundwater combined with heavy rainfall or stormwater runoff—rose enough to overcome and enter plaintiffs' swimming pools and basements. Therefore, the defect, the excess water generally, was a substantial cause of plaintiffs' property damage.

However, forces of nature or "acts of God" may be considered in determining a substantial cause. An "act of God" has been interpreted to mean "events and accidents which proceed from natural causes and cannot be anticipated and provided against, such as unprecedented storms, or freshets, lightning, earthquakes, etc." *Golden & Boter Transfer Co v Brown & Sehler Co*, 209 Mich 503, 510; 177 NW 202 (1920). In this case, the historically high groundwater was undisputedly a force of nature, an "act of God" uncontrollable by defendants or any humans. Plaintiffs' assertions that the basin was somehow defective because it failed in its routine stormwater retention capacity were left unproven, again for want of data to support their theory that excessive rains and the second drain pipe caused the inflow of a volume of water sufficient to exceed what the basin was designed to handle. No other potential, known defects were alleged or proven. Therefore, because the ultimate substantial cause was an unforeseen "act of God," this element could not be met by plaintiffs. Because plaintiffs could not prove that defendants knew or had reason to know about rising groundwater levels and because the groundwater was an unforeseen and extraordinary occurrence outside of defendants' control, the trial court did not err when it granted summary disposition in defendants' favor.

The trial court also did not err when it extended its findings and granted summary disposition in defendants' favor regarding the remaining counts of nuisance, trespass, and inverse condemnation.

In *Wiggins v Burton*, 291 Mich App 532, 555; 805 NW2d 517 (2011), this Court set forth the following elements to prove the intentional tort of trespass:

> [I]n Michigan, recovery for trespass to land . . . is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession. Once such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled to at least nominal damages. [Quotation marks and citations omitted; second alteration in original.]

To prove nuisance, "a possessor of land must prove *significant harm* resulting from the defendant's *unreasonable interference* with the use or enjoyment of the property" by some intangible means such as "noise, vibrations, or ambient dust, smoke, or fumes" rather than physical exclusion from it. *Id*. at 555-556.

Next, "a plaintiff alleging a de facto taking or inverse condemnation must establish (1) that the government's actions were a substantial cause of the decline of the property's value and (2) that the government abused its powers in affirmative actions directly aimed at the property." *Blue Harvest, Inc v DOT*, 288 Mich App 267, 277; 792 NW2d 798 (2010). Further, a "causal connection

between the government's action and the alleged damages" must also be demonstrated by the plaintiff. *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 548; 688 NW2d 550 (2004).

The trial court held that plaintiffs could not prove defendants acted in a manner that caused the high water to occur on plaintiffs' properties. The trial court recognized that the "parties agree[d] that for years and years this particular structure served its purpose, provided appropriate runoff, evaporation or leaching such that the various plaintiffs' properties were maintained and were not flooded." In *Wiggins*, 291 Mich App at 556, this Court held that a city's addition of a drain pipe from two neighbors' properties along the border of the plaintiff's backyard, directly and immediately causing rainwater runoff from the neighbors' properties to pool on the plaintiff's property, constituted a trespass. In contrast here, however, the proofs showed that defendants did nothing to directly and immediately cause the water levels to rise in the basin, negating trespass as a viable claim. Similarly, there was no evidence from plaintiffs that defendants affirmatively acted in a manner directly aimed at plaintiffs' properties, further negating the possibility of a viable inverse condemnation claim. Accordingly, the trial court did not err when it granted summary disposition in defendants' favor as to plaintiffs' trespass, nuisance, and inverse condemnation claims.

## V. MOTION TO AMEND

Plaintiffs next argue that the trial court abused its discretion when it denied their motion to amend their complaint because the added counts were "inextricably linked" to the original counts and were legally viable. Again, we disagree.

## A. STANDARD OF REVIEW

A trial court's decision to grant or deny a party's motion to amend a complaint is reviewed for abuse of discretion. *Wormsbacher v Phillip R Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009). "An abuse of discretion occurs when a court chooses an outcome outside the range of principled outcomes." *Baynesan*, 316 Mich App at 651 (quotation marks and citation omitted).

## B. ANALYSIS

"[A] party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires." MCR 2.118(A)(2). This Court has added:

> Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons. Reasons that justify denying leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the defendant, or futility. [*Wormsbacher*, 284 Mich App at 8 (citations omitted).]

An amendment prejudices the opposing party if it prevents them from receiving a fair trial. *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). An opposing party may also be prejudiced by undue delay. *Id*. Moreover,

a trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. [*Id*. at 659-660.]

Our Supreme Court has also stated speedy resolution of trials are a basis to consider and that a "[d]efense of a new claim obviously will require additional rounds of discovery . . . gathering of further evidence, and the identification of appropriate legal arguments." *Id*. at 661 (quotation marks and citation omitted). In addition,

A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint. . . . In complex cases such as this one, . . . it is particularly likely that drastic amendments on the eve of trial will prejudice the defendants. . . . Putting the defendants through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial. [*Id*. at 661-662 (quotation marks and citation omitted; alterations in original).]

In *Weymers*, the trial court denied the plaintiff's motion to amend her complaint because it was filed "for the first time just before trial was scheduled to begin" and the defendants did not have notice that the plaintiff would seek damages on the basis of a separate medical issue. *Id*. at 662. The Supreme Court affirmed the trial court's order, stating that knowledge of the separate medical issue was different from "reasonable notice that plaintiff would rely on that new theory at trial." *Id*. at 663.

In this case, plaintiffs moved for leave to amend their complaint following the second motion for summary disposition, after discovery closed, alleging a new claim and new legal theories—all concerning easement law—on the basis of the same set of facts. Up until this point, defendants were never put on notice that plaintiffs would seek to try the facts under easement law. Allowing the amendment after the close of discovery and dismissal of all counts via summary disposition would impose an unwarranted burden of additional time and expense on defendants. The trial court did not abuse its discretion in denying the motion.

Affirmed. Defendants, as the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra
/s/ James Robert Redford

-10-