# STATE v. A. ARNOLD AXILROD.*

79 N. W. (2d) 677.

November 15, 1956—No. 36,807.

---

*Certiorari denied by United States Supreme Court April 22, 1957.

*Sydney W. Goff* and *Richard B. Ryan,* for appellant.

*Miles Lord,* Attorney General, *John R. Murphy,* Assistant Attorney General, *George M. Scott,* County Attorney, *Per M. Larson* and *Bruce C. Stone,* Assistant County Attorneys, for respondent.

DELL, CHIEF JUSTICE.

Defendant was indicted by the grand jury of Hennepin County on a charge of murder in the first degree. He entered a plea of not guilty, was tried by a jury and found guilty of manslaughter in the first degree. He appeals from the judgment of conviction.

On the morning of April 23, 1955, the dead body of a 21-year-old girl was found in an alley in Minneapolis. There was considerable expert testimony that death resulted from manual strangulation. An autopsy revealed that the deceased was about three and one-half months pregnant. It also revealed evidence of sexual intercourse shortly before her death. Although married, the deceased had not seen her husband, who was in military service overseas, for over a year. For some four months prior to her death, she had been living with her father in Minneapolis.

The defendant, a married man 50 years of age, was a dentist practicing in Minneapolis. There was evidence that the deceased was a patient of the defendant; that he had on two occasions brought her home apparently under the influence of sedatives; that the deceased had accused the defendant of being responsible for her pregnancy; that on one occasion, about a month before her death, she had stated to him at his office "You know that pill you gave me and now I am pregnant"; that during the investigation he first

stated that he had not seen the deceased for several days, probably a week, before her death and that she had not been in his automobile the night before the body was found but later said "I guess there is no need to beat any longer behind the bush" and admitted that he had treated the deceased the evening before the body was discovered and had discussed the matter of her pregnancy; that on that same night they had left the defendant's office together and had driven around in defendant's automobile in the vicinity in which the body was found; that during this ride the deceased became insistent and "accusing" and threatened to expose the defendant to the world; that this caused the defendant to become very angry and he told the officials investigating the death that he "blacked out," recovering to find himself alone in the car. There was other evidence of statements by the defendant that the jury was justified in construing as admissions of assault upon the deceased.

The defendant, in an unnecessarily long, 257-page brief, lists 37 assignments of error, states 19 points to his argument, and sets forth 4 legal issues or questions as being involved.

■ Defendant's first assignment of error relates to the contention that the trial court erred to defendant's substantial prejudice in denying his motion for an order permitting him to take "discovery depositions," in the manner provided by the rules of civil procedure, of persons alleged to have knowledge of relevant facts. The motion was denied on the ground that depositions for discovery purposes are authorized only in civil cases and are not available in criminal cases.

The deposition-discovery device was first authorized in this state under the rules of civil procedure, effective January 1, 1952.[1] The statute under which the rules of civil procedure were promulgated provides in part:

"The supreme court of this state shall have the power to regulate the pleadings, practice, procedure, and the forms thereof *in civil actions* * * *."[2] (Italics supplied.)

---

[1] Rule 26, et seq., Rules of Civil Procedure. See, Louisell, *Discovery and Pre-Trial Under the Minnesota Rules*, 36 Minn. L. Rev. 633.

[2] M. S. A. 480.051.

In defining the scope of the rules, Rule 1, Rules of Civil Procedure, provides in part:

"These rules govern the procedure in the district courts of the State of Minnesota *in all suits of a civil nature,* * * *." (Italics supplied.)

Nevertheless, defendant contends that by virtue of M. S. A. 611.08 the deposition-discovery device of the rules of civil procedure applies in criminal cases as well as in civil actions. Section 611.08 provides in part:

"Upon cause shown to the court in which any criminal action is pending, a judge thereof may by order allow depositions of witnesses on behalf of the prisoner to be taken in the same manner and in like cases where they may be taken in civil actions. The depositions so taken may be used upon the trial of the defendant, in his behalf, as depositions are now allowed and used in civil actions."[3]

At the time of the enactment of this section in 1876,[4] depositions could be taken in civil actions only for the purpose of obtaining evidence for use at the trial where a witness, because of certain specified reasons, was unable to appear, or for the perpetuation of testimony.[5] However, defendant points out that, where a statute adopts the law generally relating to a subject matter, it adopts that law as it exists from time to time and not as it exists at the time the adopting statute is enacted.[6] He concludes, therefore, that § 611.08 incorporates the deposition-discovery mechanism now provided for in the rules of civil procedure even though depositions for discovery purposes were not permitted at the time § 611.08 was enacted.

Even if we were to assume that the legislature, in enacting § 611.08, intended that depositions should be permitted in criminal

---

[3]While permission to take depositions under this statute is discretionary, the trial court in the instant case did not exercise any discretion. It based its ruling solely on the inapplicability of the rules of civil procedure in criminal cases.

[4]L. 1876, c. 57, § 1.

[5]Stat. at Large 1873, c. 41, §§ 286 to 302; M. S. A. 1949, cc. 597, 598.

[6]82 C. J. S., Statutes, § 370, p. 848.

cases to the same extent that they might subsequently be permitted in civil cases,[7] we cannot agree with defendant's conclusion. Regardless of existing statutes, there is nothing to prevent the legislature from subsequently enacting laws to apply *exclusively* to procedure in civil cases or to authorize the promulgation of rules of procedure exclusively for civil cases. M. S. A. 480.051 clearly limits the authority of this court to the promulgation of *rules governing civil actions,* and the rules themselves are specifically so limited in application.[8]

The right of a defendant in a criminal proceeding to take and use depositions under other existing statutes is not before us. It is sufficient that the source of the right, if there is any, is not to be found in the rules of civil procedure and hence does not include the right to take depositions for discovery purposes.

■ Assignments of error 2 through 10 relate to the attendant publicity and certain remarks of the trial judge and the prosecuting attorney as prejudicing the defendant and denying him a fair and impartial trial. An examination of these contentions reveals no reversible error, and it would serve no useful purpose to comment on them.

■ Assignments of error 3, 11, and 13 through 17 relate to the witness, Donald V. Newton. Defendant's primary contention is that the trial court erred in refusing to call Newton as a witness for the court and in not permitting defendant to ask him leading questions on direct examination. It is generally held that a trial court has no affirmative duty to call a witness on its own initiative.[9] However, where a witness is obviously hostile or unwilling, "leading

---

[7]The second sentence of § 611.08 provides that depositions may be used "as depositions are *now* allowed and used in civil actions." (Italics supplied.) It is questionable whether the legislature would restrict the "use" of depositions to the civil practice then existing without intending to impose the same restriction on their "taking."

[8]Rule 1, Rules of Civil Procedure. See, also, Wright, Minnesota Rules, p. 1.

[9]19 Dunnell, Dig. (3 ed.) § 9721b; 9 Wigmore, Evidence (3 ed.) § 2484. Compare dissenting opinion of Mr. Justice Frankfurter in Johnson v. United States, 333 U. S. 46, 54, 68 S. Ct. 391, 396, 92 L. ed. 468, 475, to the effect that the trial court has the *duty* to call and examine witnesses "before resorting to guesswork in establishing liability for fault."

questions" may be permitted for the purpose of eliciting facts[10] inasmuch as there is little, if any, danger of counsel effectively suggesting specific answers.[11] Since the propriety of allowing leading questions depends upon the particular circumstances of each case, the determination rests largely in the discretion of the trial court. As pointed out by Professor Wigmore (3 Wigmore, Evidence [3 ed.] § 770):

"It follows, from the broad and flexible character of the controlling principle, that its application must rest largely, if not entirely, *in the hands of the trial Court.* So much depends on the circumstances of each case, the demeanor of each witness, and the tenor of the preceding questions, that it would be unwise, if not impossible, to attempt in an appellate tribunal to consider each instance adequately."

And in Usher v. Eckhardt, 176 Minn. 210, 214, 222 N. W. 924, 925, we said:

"The control of a trial court over the matter of allowing leading questions is practically absolute; and it will only be in instances where the power has been grossly abused, resulting in a manifest miscarriage of justice, that a new trial will be granted. [Citing cases.]"

Although the trial court recognized that the witness Newton was "hostile," we can find no gross abuse of its wide discretion in refusing to permit counsel to ask leading questions under the circumstances of this case. Moreover, since the witness declined to give the desired information on constitutional grounds, we fail to see how defendant could have been prejudiced by the court's refusal to permit the questions in another form.

■ Assignments of error 18 and 21 relate to certain impeaching evidence regarding the defendant's witness, Leonard Ugland. The state called two witnesses who testified that they had known Ugland for approximately five months; that they were familiar with his

---

[10]Defendant does not contend that he should have been permitted to cross-examine the witness for the purpose of impeachment.

[11]See, e.g., Muenkel v. Muenkel, 143 Minn. 29, 173 N. W. 184.

reputation as to truthfulness; that that reputation was bad; and that they would not believe him under oath. The defendant argues that, because the impeaching testimony was based upon a brief period of time and confined primarily to the community in which Ugland worked rather than that in which he lived, it should not have been permitted. First, the time involved was, in our opinion, sufficient for the persons testifying to have gained knowledge of Ugland's reputation. Second, in this state the restrictive concept of "community" is not followed, and the testimony may extend to the reputation of the witness for truth and veracity in the community where he works as well as that in which he has his home.[12]

■ Assignments of error 12, 22 through 25, and 36 relate to the sufficiency of the evidence. The evidence, as briefly summarized at the beginning of this opinion, amply sustains the verdict. There is no point in further analyzing it or in setting forth the details. Suffice to say the conviction was justified.

■ Assignments of error 27 through 35 deal with the giving of and refusal to give certain instructions. In particular defendant argues that the court erred in refusing to instruct the jury that the burden rested upon the state to establish beyond a reasonable doubt that the killing was not excusable or justifiable. The court did instruct the jury that the state must prove the essential elements of the offense, one of which was that the killing was done without excuse or justification. Defendant, relying upon State v. McPherson, 114 Minn. 498, 131 N. W. 645, and State v. McGrath, 119 Minn. 321, 138 N. W. 310, contends that the failure of the court to amplify the instruction regarding the burden of proving that the homicide was without excuse or justification constitutes prejudicial error. In both of the cases relied upon the homicide was admitted and the sole question involved was whether the killing was without justification. In the instant case there was no controversy regarding excuse or justification, and the state's evidence in this regard was conclusive. While it would perhaps be more satisfactory for the

[12]See, Simon v. Carroll, 241 Minn. 211, 221, note 11, 62 N. W. (2d) 822, 829, note 10, and authorities there cited; see, also, 36 Minn. L. Rev. 724, 732.

·trial courts to amplify their instructions on this element as indicated in the McPherson and McGrath cases, *supra,* we cannot say that the failure to do so under the particular circumstances of this case constituted prejudicial error.

No useful purpose would be served in extensively comparing the remainder of the instructions requested with those given. As we said in State v. Pankratz, 238 Minn. 517, 57 N. W. (2d) 635, 646:

"* * * It was not necessary to give the law in the exact language of the request so long as the applicable law was correctly stated by the court in its charge."

Viewing the instructions in their entirety, as we must,[13] we find that they adequately and fairly explained the law of the case.

■ We have carefully examined and considered the other assignments of error and have reached the conclusion that no error of a prejudicial nature was committed.

Affirmed.

### ON PETITION FOR REHEARING.

On December 14, 1956, the following opinion was filed:

DELL, CHIEF JUDGE.

A petition for rehearing has been filed by the appellant. The points raised in the petition were fully considered by the court and disposed of in the opinion heretofore filed. The petition must, therefore, be denied.

However, after reading the petition, we deem it advisable to correct what might be considered a misleading statement in the opinion. We said, in effect, that the trial court instructed the jury that the state must prove the essential elements of the offense, one of which was that the killing was done without excuse or justification. The trial court specifically so instructed the jury only with reference to the offense of murder in the first degree. The court then went on to point out the differences in the elements of lesser included offenses. Although perhaps not expressly spelled out, the instructions

---

[13]See, Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. (2d) 793, 798; Swanson v. LaFontaine, 238 Minn. 460, 469, 57 N. W. (2d) 262, 268.

considered as a whole make it clear that the lack of "excuse or justification" element was also a necessary ingredient of the lesser offenses. If there was any technical error in the court's charge respecting this element, it was clearly error without prejudice since, as pointed out in the opinion, the state's evidence conclusively established that the killing here was without excuse or justification.

Petition for rehearing denied.

JUDGE MURPHY took no part in the consideration or decision of this case.