**STATE of Missouri, Respondent,**

v.

**Solomon JACKSON, Appellant.**

No. 50054.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

H. H. McNabb, Jr., Belisle & McNabb, Butler, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Arthur S. Margulis, Sp. Asst. Atty. Gen., St. Louis, for respondent.

HOLLINGSWORTH, Judge.

On the evening of July 10, 1962, in the City of Butler, Bates County, Missouri, Solomon Jackson, hereinafter referred to as defendant, shot and severely wounded his mother-in-law, Mrs. Helen Sweets. By an information filed in the Circuit Court of Bates County, he was charged under § 559.-180 RSMo 1959, V.A.M.S., (to which revision all statutory references herein are made) with having willfully, unlawfully, feloniously, on purpose and of his malice aforethought so assaulted and shot her, with intent then and there to kill her. Upon trial to a jury, defendant was found guilty of willful and felonious assault with intent to kill, without malice aforethought, and his punishment was assessed at imprisonment for a term of four years, in accordance with the provisions of § 559.190, which latter offense is included within § 559.180. State v. Parrish, Mo., 214 S.W.2d 558. Following hearing of his motion for new trial, defendant was adjudged guilty of the offense

of which he was found guilty and was committed to the custody of the State Board of Corrections for a term of four years. This appeal ensued.

Defendant, represented by counsel at the trial and by the same counsel on this appeal, does not challenge the sufficiency of the evidence to support the verdict. Error is assigned in the failure of the trial court to instruct the jury on the subject of the good character of the defendant, and in denying defendant's objection to statements made by the prosecuting attorney during the course of the trial wherein he allegedly expressed his personal opinion as to the guilt of the defendant.

A brief statement of the evidence will suffice. The evidence in behalf of the State supports a finding of the following facts. About one week prior to the day of the shooting, defendant's wife, Anna Marie, (then separated from defendant) came to and stayed at the home of her mother, Mrs. Sweets, in Butler. That home, facing west, was on the east side of Olive Street, which is about 20 feet wide. The front porch was within a few feet of the east side of that street. Between 8 and 9 o'clock on the evening of the shooting, Mrs. Sweets and her sister sat on the porch. Several of Mrs. Sweets' children and grandchildren were also on or about the porch. Defendant sat in his car parked on the west side of Olive Street directly in front of the Sweets home, talking with Anna Marie, who stood by his car. Defendant soon drove away but, within about ten minutes, returned, parked his car in the same general area, got out of his car, reached back of the front seat and pulled out a shotgun. Mrs. Sweets went from the front porch to the front door of the home, opened the screen door and entered the home. Defendant fired two shots from the gun. The first shot went through the screen door and struck the right rear side of Mrs. Sweets below her waistline; the second shot went in the direction of, but did not strike, Anna Marie as she ran from where she had been standing near defendant's car.

Further evidence adduced in behalf of the State was that defendant made threatening statements immediately before firing the gun: to Mrs. Sweets he said, "If you go in that house I'll kill you", or, as another witness testified, "Don't go in there"; to Anna Marie he said, "Anna Marie, don't cause me to hurt a lot of people." Another witness testified he said, "I'll kill all of you sons-of-bitches." The sheriff of Bates County testified that on the day following the shooting he asked defendant why he did what he did, to which defendant replied, "Oh, that old lady [Mrs. Sweets] has been giving me trouble for 13 or 14 years."

Defendant testified: He resided in Kansas City. One week before the day of the shooting, he called the Sweets home and was told by Mrs. Sweets that Anna Marie was not there, but he "went on down". Mrs. Sweets would not let him talk to Anna Marie and had him arrested. He then had some papers made out to sell or lease his and Anna Marie's home in Kansas City and sent them to Anna Marie, but she did not return them. He went to the Sweets home on July 10th and he and Anna Marie discussed divorce; he wanted her to come back home. After they had talked awhile, he drove away but shortly thereafter returned and tried to talk to Anna Marie out in the street. Mrs. Sweets kept calling Anna Marie to come into the house. Defendant reached for his shotgun, which he kept back of the front seat of his car, "turned around and went to pump it down and that's when it went off." As to pointing the gun at Mrs. Sweets, defendant said, "I didn't, I never had any intention to point it at her." His intention "was just to try to scare them to make them leave me alone, that's all I intended to do." His further testimony was that both shots were accidentally fired as he attempted to "pump the gun"; that he accidentally pulled the trigger; and that he made none of the remarks attributed to him by the witnesses for the State.

Further evidence adduced in behalf of defendant consisted of the testimony of two

witnesses who, without objection, testified that defendant's reputation as a peaceful, law-abiding citizen was good. The trial court, however, gave no instruction on the subject of the good character of defendant. He assigns prejudicial error in that respect. The Attorney General insists that the testimony as to defendant's good character was neither competent nor substantial and that the trial court is not to be convicted of prejudicial error in failing to instruct the jury upon the subject of good character, as provided by S.Ct. Rule 26.02(6), V.A.M.R., as follows:

"In all criminal cases the court, whether or not it shall have been requested so to do by either party, must instruct the jury in writing upon all questions of law necessary for their guidance in returning their verdict which shall include whenever necessary the subjects of good character and reasonable doubt. In all felony cases failure so to instruct shall be good cause for setting aside a verdict of guilty by the jury and granting a new trial."

The first of defendant's character witnesses was Dr. Otis Miller, who testified: He was Professor of Business, Rockhurst College, Kansas City, and held a Ph.D. degree in Economics. He was also in the real estate business and among other phases of that business managed an apartment house and other properties. Defendant was a tenant in the apartment house. *The witness had only known defendant for the past two months.* (The shooting occurred July 10, the trial was held on October 8.) Defendant worked for the witness in the upkeep of the apartment house, where he earned the respect of the tenants, during which time the witness became familiar with defendant's reputation as a peaceful, law-abiding citizen. His reputation in that respect was "very good". On cross-examination the witness testified he had not known defendant or his reputation prior to the shooting.

The second witness, John Taylor Brady, testified: He is and has been a building contractor, residing in Overland Park, Kansas, for about 15 years, during which period he has employed men. Defendant started working for the business there operated by the witness about 14 or 15 years ago; he sees him every day on the job. Defendant has been a foreman for the past five years. He knows defendant's reputation among "those people he deals with" as it relates to his being a peaceful, law-abiding, non-violent person; it is good.

 S.Ct. Rule 26.02(6), in substance the same as § 546.070, in specific terms requires the trial court, *whether requested or not,* to instruct the jury on the subject of good character *whenever necessary,* and when the defendant is found guilty the failure to so instruct the jury constitutes grounds for setting aside the verdict. The words "whenever necessary", as used in the rule, mean whenever there is any substantial evidence of defendant's general reputation of good character. State v. Baird, 288 Mo. 62, 231 S.W. 625, 627, 15 A.L.R. 1035; State v. Brown, Mo., 62 S.W.2d 426, 427; State v. Fowler, Mo., 189 S.W.2d 549, 550–551; State v. Terry, Mo., 325 S.W.2d 1, 8; State v. Cross, Mo., 343 S.W.2d 20, 25. The reason for such rule is that in Missouri, as in most other states, proof of good character is considered to be substantive proof of the defendant's innocence; that is, to show the improbability of his committing the crime charged. State v. Nienaber, 347 Mo. 541, 148 S.W.2d 537, 541; 22A C.J.S. Criminal Law § 676, pp. 699–700.

 We arè constrained to hold, however, that the testimony of Dr. Miller that defendant bore a good reputation as a peaceful, law-abiding man constituted no substantive proof of his innocence of the crime of which he was charged; this for the reason that the doctor's testimony in that respect was predicated upon the reputation acquired by defendant several months subsequent to the date on which he shot Mrs. Sweets. " * * * [E]vidence of

character must be confined to proof of character or reputation at or prior to the commission of the offense, and must not be allowed to cover character after the commission of the offense or what was said after the offense as to accused's character either before or after the offense." 22A C.J.S. Criminal Law § 677(2), pp. 709–710. See also State v. Carson, Mo.App., 239 S.W. 2d 532, 536 [7].

The State also insists that the testimony of defendant's employer, John Taylor Brady, for a period of 14 or 15 years prior to the shooting, was wholly incompetent and constituted no substantial evidence of defendant's character as invoked in this case. In support of that contention we are cited the case of Pittman v. United States, 8 Cir., 42 F.2d 793. In that case, the defendant, a resident of Taney County, one of the essentially rural counties of Missouri, was on trial for violating the National Prohibition Act. During the course of a lengthy consideration of the admissibility of evidence with respect to his character, under a state of facts not apposite here, the court made these observations, loc. cit. 42 F.2d 796:

> "A witness sufficiently qualified may testify as to the general reputation of a defendant as to good character prior to the time of the charges in the indictment or information in the community where he resides."

And further, loc. cit. 42 F.2d 798:

> "General reputation as to good character of a defendant is founded on the opinion of the people in the community where the defendant lives. The test is the consensus of opinion of the community, and, while it may be possible, of course, that one living outside a community may know of the general reputation of a defendant therein, ordinarily the proper witnesses to prove this are citizens of the community."

The observations made by the court in the above case are not dispositive of the contention made by the Attorney General in the instant case. Generally, it may be said, as stated in Wigmore on Evidence, 3rd Ed., Vol. III, § 692, p. 18:

> "The admissible reputation is that which is built up in the neighborhood of a man's domicile *or in the circle where his livelihood is followed* (post, § 1615); and it is of slow formation. It is the sum of all that is said or not said for or against him." (Emphasis supplied.)

The author of the above treatise more fully thus states in Vol. V, § 1615, p. 488, the modern and more trustworthy rule:

> "In that type of community where the ordinary person's home is under the same roof as his store or workshop, or where the stores, workshops, offices, and homes are all collected within a small village or town group, and one's working associates are equally the neighbors of one's home, there is but one community for the purpose of forming public opinion, and there is but a single capacity in which the ordinary person can exhibit his character to the community. In other words, he can there have but one reputation. But in the conditions of life today, especially in large cities, a man may have one reputation in the suburb of his residence and another in the office or the factory at his place of work; * * *.

> "There is every reason why the law should recognize this. Time has produced new conditions for reputations. The traditional requirement about 'neighborhood' reputation was appropriate to the conditions of the time; but it should not be taken as imposing arbitrary limitations not appropriate in other times. 'Alia tempora, alii mores.' What the law, then as now, desired was a trustworthy reputation; if that is to be found among a circle of persons other than the circle of dwellers about a sleeping-place, it should be received."

In this case the undisputed evidence shows that, although defendant resided in

Kansas City, his working days, for a period of 14 or 15 years, had been spent in close association with his fellow employees, during the first 9 or 10 years of which employment he had worked as a common laborer and for the last 5 years had been a foreman. His employer testified, without objection, that he had known defendant's reputation among "those people he deals with" during the course of his employment for being a peaceful, law-abiding, non-violent person; and it was good.

It is a matter of common knowledge that the reputation of the average man residing in a large metropolis often is much better known among those with whom he spends his working days than among those residing in the immediate area of his residence. There is no suggestion in the record that defendant had established any general reputation in the "community" or, possibly, several "communities" in which he had resided. There is evidence of his general reputation for the traits of character here material among those with whom he associated during his working hours for a period of 14 or 15 years.

It is our conclusion that the testimony of John Taylor Brady, adduced in behalf of defendant, constituted material, relevant and substantial evidence of defendant's general reputation as a peaceful, law-abiding, non-violent person "in the circle where his livelihood [was] followed"; that such evidence, having been admitted without objection, placed his character in those respects in issue as a matter for consideration of the jury; and that the trial court erred to the prejudice of defendant in not instructing the jury as required under S.Ct. Rule 26.02(6).

The conclusion here reached makes it not necessary to rule the other error assigned. It is suggested, however, that if in any future trial the court, *in its discretion,* finds it advisable to give an instruction on the credibility of witnesses, as it did in the trial here reviewed, the case of State v. Fingers, Mo., 357 S.W.2d 89, should be taken into consideration; and that, if any

instruction be given on the subject of the good character of the defendant, the case of State v. Jackson, Mo., 369 S.W.2d 199, be taken into consideration in the wording of such instruction.

The judgment is reversed and the cause remanded.

All concur.