James Edward WILSON and Jewell Curtis Winn, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 3, 1971.

Rehearing Denied March 3, 1972.

Frank E. Haddad, Jr., Louisville, for appellants.

John B. Breckinridge, Atty. Gen., Curtis L. Wilson, Asst. Atty. Gen., for appellee.

GARDNER, Commissioner.

James Edward Wilson and Jewell Curtis Winn were convicted of grand larceny and each sentenced to one year in the penitentiary. They have assigned 11 errors and discussed each in detail in their 120-page brief. Some of the contentions are incon-

sequential and we are not constrained to discuss them.

Fetzer Refrigerator Company of Louisville was broken into on October 28 or 29, 1967. Nine rolls of carpeting, a chain saw and a vacuum cleaner were taken. Wilson and Winn were members of the Louisville Police Department on the dates mentioned. They were assigned Beat Car 202 which patrolled Beat 202. The Fetzer Refrigerator Company's building was located in Beat 201, patrolled by Beat Car 201. On August 13, 1967, about two months before the goods were stolen, Don Slater, an employee of Fetzer, returned to the Fetzer building to pick up additional carpeting material to finish the job on which he was working. Car 202 was parked at the Fetzer building with no policemen in view. Slater called the Louisville Police Department and reported the fact. Shortly after the call was made Winn came out of the building. He told Slater that Wilson was still inside. The officers explained that they had seen an open door leading into the Fetzer building and went in to investigate.

In February 1969 the carpeting and vacuum cleaner were found in a used-furniture store owned and operated by Thomas Hall Burgess. Burgess testified that Winn and Wilson had requested that he store the items for them. In January 1969, one month before the stolen goods were recovered, Winn was suspended from the police department. (He had been charged with murder in Boyle County.) Among the items inventoried from Winn's locker was a key that fit the main door of the Fetzer building.

■ Appellants contend that the evidence (the carpeting and vacuum cleaner) should have been suppressed because it was taken into possession by the police without a search warrant. They are in error. Burgess voluntarily permitted the police officers to search his store. Appellants insist that they had a possessory right to the area where the items were stored and the officers had no authority to invade that right even though Burgess gave them permission. It is noted from the record that there was no enclosed area where the goods were placed nor were the goods set apart from other items in the store. Burgess's store was open to the public and there was an implied invitation for customers to come in and browse around. We see here no contravention of the Fourth Amendment to the Constitution of the United States which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *."

The authorities cited by appellants are concerned with facts of a different category. In Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), for example, the accused was using an apartment belonging to a friend; the friend had let him have a key to the apartment; some of the accused's clothes were in the apartment; he had stayed at least one night there. The court held the accused had sufficient possession to allow him to raise the question of illegal search of the apartment. In United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), a search of a hotel room without a warrant was determined to be illegal, where the room was engaged by the accused's aunt who had given him a key with permission to use the room at will. Other cases—Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967); Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed. 2d 828 (1961); Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964)—relied on by appellants, are not influential because they also are factually different from the instant case. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), cited by appellants, is malapropos. It deals with the introduction of clothing and other items not considered as instruments in the perpetration of the crime. The court rejected the rule fostered by Gouled v. Unit-

ed States, 255 U.S. 298, 41 S.Ct. 261, 65 L. Ed. 647 (1921), that items of only evidentiary value, as distinguished from "instrumentalities," "fruits," or "contraband," could not be seized or introduced in evidence.

Continuing further in a constitutional vein, appellants argue that the warrantless search of the locker where the key to the Fetzer building was found was in violation of the Fourth Amendment of the United States Constitution. Relied on by appellants are: Frazier v. Cupp, Warden, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967); United States v. Elwood, U.S.Ct.Mil.App., 4/17/70, 7 Criminal Law Reporter 2094; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Ex parte Jackson, 96 U.S. 727, 24 L.Ed. 877 (1877); Nichols v. Commonwealth, Ky., 408 S.W.2d 189 (1966). Many of the cases point up the recent trend of the Supreme Court to zealously guard the rights of persons against unreasonable searches and seizures. None of them, however, presents facts with enough similarity to the instant case to be controlling.

■ Winn makes no complaint of his having been suspended from the police department a couple of months before he was accused of stealing the carpeting. Subsequent to his suspension Captain Maurice Raque emptied the contents of the locker, made an inventory and placed the items in the property room. Among the contents was the key, which was introduced into evidence, to the Fetzer building. Captain Raque testified that all lockers belonged to the police department and the policemen understood that the department had the right "to go into any locker at any time we want to." He pointed out that there was a scarcity of lockers and the department would assign a locker to someone else just as soon as it became available. Captain Raque stated that Winn was asked to turn in his gun, badge, keys, handcuffs, and any other property that had been issued to him. He further stated that the various rules and regulations of the department, including the fact that the department maintained a key to the lockers and had a right to inspect them at any time, were explained to all officers as a part of the instructions at the recruiting school. Appellants contend there was ample time to obtain a search warrant and under the holding of Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), a warrant was a prerequisite to the search of a locker. It is noted in the first place the police department had no reason to suspect the key was in the locker and an affidavit for a search warrant could not have been obtained. In the second place the locker belonged to the department. It had the right of access to it at any time, and Winn, as all other policemen on the force, knew that upon his leaving the department the contents must be removed immediately either by the policeman leaving or by the department.

■ Winn contends further that assuming the department had the right to look into the locker, the Fetzer key was in an attache case and opening the attache case without a search warrant was one step too far. An analysis of the testimony of Officer Alton Carr points to the fact that Winn had no ownership or possessory right of the attache case. The attache case was picked up by Officer Carr at the scene of another crime. He brought it back to the police department and after it was processed handed it to Winn. At that time Winn was in charge of the property room where such items were placed after beng processed. Instead of leaving the attache case in the property room, Winn took it with him and used it for several weeks until it was finally retrieved from

the locker by Captain Raque. These being the circumstances, as between Winn and the police department, the latter had exclusive possessory rights to the attache case. The department simply recovered an item that had wrongfully been taken from it with the same right an individual would have in manually retrieving an item that had been stolen from him. The right of the department to look into the attache case was absolute. Appellants, in fact, had no standing to question the legality of the search. See Commonwealth v. Johnson, Ky., 420 S.W.2d 103 (1967), where we said "Inasmuch as the trailer searched was stolen, appellees had no standing to question its search." It follows that the court correctly overruled appellants' motion to suppress the evidence growing out of the key incident.

Appellants insist that much of the testimony of Mrs. Thomas Burgess, wife of the store owner, was incompetent. Mrs. Burgess testified that her husband telephoned Winn to see if he could buy some carpeting which he intended to use on the floor of Mr. Burgess's mother's house. Pursuant to the phone conversation Winn, with Mrs. Burgess following, drove to a private garage, picked up a piece of carpet (6' x 20') and placed it in Mrs. Burgess's station wagon. Mrs. Burgess testified this carpeting was "similar" to the carpeting kept in her husband's store. Appellants complain of the admission of the evidence because Mrs. Burgess did not state definitely that the carpeting picked up by Winn at the private garage was identical with that left in Mr. Burgess's store. We believe the evidence was competent. The indefiniteness of Mrs. Burgess's statement goes to the weight of the evidence rather than its competency. There was prior evidence of Winn having left nine rolls of carpeting at Burgess's store and of his later having removed three of the rolls. Mrs. Burgess had seen the carpeting at the store and it cannot be persuasively argued that her testimony of the carpeting at the two places being "similar" is incompetent.

Colonel C. J. Hyde, Louisville Chief of Police, testified that Winn's general reputation "where he is best known" for truth and veracity was bad. It was error, claims Winn, not to sustain his objection because it permitted the witness to testify as to Winn's reputation gained from persons other than those residing in the community in which Winn lived. CR 43.07 does not spell out from whom the reputation of the witness must be obtained. It has been accepted that in small rural communities the general reputation could best be discovered from other citizens of the community. In metropolitan areas where often a person does not know his next door neighbor it could very well be that persons from whom a reputation could best be established would be those with whom he works. The observation in McCormick on Evidence, 1954, page 96, is:

"As to place, the traditional inquiry is as to general reputation for veracity 'in the community where he lives.' * * * This limitation was appropriate for the situation in England (and less so in America) before the Industrial Revolution, where most people lived either in small towns or in rural villages. But as an exclusive limitation it would not be appropriate in this country today, where a man may be little known in the suburb or city neighborhood where he lives, but well known in another locality where he spends his work-days or in several localities where he does business from time to time."

Colonel Hyde's knowledge of Winn's reputation came mostly from persons who knew him in a work-connected way which, we believe, was proper.

Appellants insist the court ought to have admonished the jury that it should consider the reputation evidence only insofar as it affected the credibility of the wit-

ness. They cite no authority, announcing that such failure is prejudicial error. This is not an instance as was Buchanan v. Commonwealth, 304 Ky. 225, 200 S.W.2d 459 (1947), cited by appellants, where a witness was permitted to testify as to the reputation of the defendant "for honesty and integrity," when the defendant had not placed in issue that trait of his character.

■ In their brief appellants attack from many angles the manner in which the Assistant Commonwealth Attorney conducted the prosecution. They devote some 60 pages in developing their arguments that he was responsible for reversible errors. It would unduly prolong this opinion and would serve no useful purpose to discuss the alleged errors in detail. We have examined the points thoroughly and do not find any to be serious enough to require reversal of the judgment. Appellants suggest that even if no one error is serious enough to prompt a reversal, the composite effect of the many errors is of such magnitude that the jury could very well have been substantially prejudiced by it. We quite agree that the prosecutor stepped out of line on numerous occasions and if the evidence of guilt had been weak our inclination would be to agree with appellants. The evidence of the instant case, however, strongly points toward the guilt of appellants, and we do not believe the errors were of such importance to influence the jury in their finding.

Appellants contend an erroneous instruction was given as follows:

"You may find the defendants not guilty or you may find the defendants guilty, according as you are satisfied from the evidence beyond a reasonable doubt that one or both have been proven guilty."

■ Specifically they argue that the instruction authorized the jury to return a guilty verdict for both defendants although they found beyond a reasonable doubt that only one was guilty. This is a

technical observation. We believe that this instruction, though not written in the clearest of terms, with other instructions, explained to the jury they could find either or both of the appellants guilty.

The judgment is affirmed.

All concur.