637 N.E.2d 1321 (1994)
Brian D. DYNES, Appellant-Defendant,
v.
Carol A. DYNES, Appellee-Plaintiff.
No. 90A02-9310-CV-537.
Court of Appeals of Indiana, Second District.
July 18, 1994.
Transfer Denied November 30, 1994.
*1322 Nancy G. Endsley, Indianapolis, for appellant.
Joseph M. Johnson, Devoss, Scott, Johnson & Baker, P.C., Decatur, for appellee.
KIRSCH, Judge.
This is an appeal by Brian Dynes of a Decree of Dissolution of Marriage, entered by the Wells Superior Court, granting custody of their three children to his ex-wife Carol Dynes. Brian raises several issues on appeal, but we consider only one: whether the trial court erroneously excluded evidence of Carol's reputation for honesty in her workplace.
We reverse.

FACTS
Brian and Carol were married on July 2, 1982. During the course of their marriage, they had three children. Brian petitioned for dissolution of the marriage on December 4, 1991. On June 8, 1993, the trial court entered a Decree of Dissolution of Marriage granting custody of the children to Carol.
A detailed recitation of the evidence introduced at trial is not necessary. It is enough to say that the custody hearing was acrimonious, with each party trying to show the other unfit as a parent and untruthful as a witness. Brian and Carol each told conflicting versions of their life together, and there was little corroboration of either's testimony by neutral sources. The trial court was forced to rely heavily upon the credibility of the parties in its custody determination.

DISCUSSION AND DECISION
Before the dissolution, the parties lived together in Adams County and worked in Wells County. Both Brian and Carol worked at Bluffton Agri Industrial for several years. Carol has worked there since October, 1986. At the custody hearing, Brian offered testimony by a co-worker that Carol had a reputation in her workplace for dishonesty. The trial court sustained Carol's objection to that testimony and Brian preserved the testimony by an offer to prove. Brian contends that it was error for the trial court to exclude his offered evidence. Carol replies that admissible evidence of her reputation is limited to evidence of that reputation in the community in which she resides.
From earliest times, Indiana courts have allowed impeachment through evidence of a person's reputation for truth and veracity in the community. See, e.g., Rucker v. Beaty (1851), 3 Ind. 70, 71. Since 1881, evidence of a witness's general moral character has been admissible in all matters affecting that witness's credibility. IC XX-X-XX-XX (1988 Ed.).[1] Ind.Evidence Rule 608(a)[2] now governs the admission of reputation evidence for impeachment or support of a witness.
Other jurisdictions have generally limited evidence of reputation to the community of residence. See McCormick, Evidence § 43 at 158-59 (4th ed. 1992). While early Indiana cases discussed character evidence with reference to reputation in the neighborhood of residence, e.g., Chance v. Indianapolis and Westfield Gravel Road Co. (1870), 32 *1323 Ind. 472, 475 and Rawles v. State ex rel Ford (1877), 56 Ind. 433, 441, we find no Indiana cases holding that evidence of a witness's reputation in the workplace is inadmissible. And in Johnson v. State (1981), Ind. App., 419 N.E.2d 232, we allowed impeachment of a defendant through evidence of her general reputation for truth within the school she attended. Id. at 236-38. Neither IC XX-X-XX-XX, nor Evid.R. 608(a) limits reputation evidence to reputation in the community of residence.
The trend of modern authority is to allow evidence of the witness's reputation in the workplace. As Professor Wigmore explains:
"In that type of community where the ordinary person's house is under the same roof as his store or workshop, or where the stores, workshops, offices, and houses are all collected within a small village or town group, and one's working associates are equally the neighbors of one's home, there is but one community for the purpose of forming public opinion, and there is but a single capacity in which the ordinary person can exhibit his character to the community. In other words, there he can have but one reputation. But in the conditions of life today, especially in large cities, a man may have one reputation in the suburb of his residence and another in the office or the factory at his place of work; or he may have one reputation in his place of technical domicile in New York and another in the region of the mines of Michigan or the steel mills of Ohio where his investments call him for supervision for portions of time. There may be distinct circles of persons, each circle having no relation to the other, and yet each having a reputation based on constant and intimate personal observation of the man.
There is every reason why the law should recognize this. Time has produced new conditions for reputations. The traditional requirement about `neighborhood' reputation was appropriate to the conditions of the time; but it should not be taken as imposing arbitrary limitations not appropriate in other times. Alia tempore, alii mores. What the law, then as now, desired was a trustworthy reputation; if that is to be found among a circle of persons other than the circle of dwellers about a sleeping-place, it should be received."
5 Wigmore, Evidence § 1616 at 591 (Chadbourn rev. 1974). See also McCormick, supra.
Over the years, a number of jurisdictions have accepted Professor Wigmore's logic. See, e.g., Brotherhood of Railroad Trainmen v. Vickers (1917), 121 Va. 311, 93 S.E. 577, 578-79 (workplace); People v. Colantone (1926), 243 N.Y. 134, 152 N.E. 700, 702 (school and army post); Hamilton v. State (1937), 129 Fla. 219, 176 So. 89, 94 (workplace); People v. Kronk (1950), 326 Mich. 744, 40 N.W.2d 788, 789 (work community); State v. Axilrod (1956), 248 Minn. 204, 79 N.W.2d 677, 682 (work community), cert. denied, (1957), 353 U.S. 938, 77 S.Ct. 815, 1 L.Ed.2d 760; State v. Jackson (1963), Mo., 373 S.W.2d 4, 8-9 (workplace); United States v. Parker (7th Cir.1971), 447 F.2d 826, 831 (workplace); Wilson v. Commonwealth (1972), Ky., 475 S.W.2d 895, 899 (workplace); State v. McEachern (1973), 283 N.C. 57, 194 S.E.2d 787, 791-94 (any community in which person has well-known reputation); State v. Walker (1976), La., 334 So.2d 205, 206-07 (workplace); People v. Williams (1990), 139 Ill.2d 1, 150 Ill.Dec. 544, 553, 563 N.E.2d 431, 440 (workplace); cert. denied (1991), 499 U.S. 979, 111 S.Ct. 1630, 113 L.Ed.2d 726; Commonwealth v. Arthur (1991), 31 Mass. App. Ct. 178, 575 N.E.2d 1147, 1148 (school); and State v. Land (1993), 121 Wash.2d 494, 851 P.2d 678, 680-81 (business community).
We conclude that evidence of reputation for veracity should not necessarily be limited to that within the person's community of residence, but should include any community or society in which he or she has a well-known or established reputation. That reputation must be a general reputation, held by an identifiable group of people who have an adequate basis upon which to form an opinion, and the witness testifying to reputation must have sufficient contact with that community or society to qualify as knowledgeable of the general reputation of the person whose character is attacked or supported.
*1324 Accordingly, we hold that the exclusion of the offered evidence of Carol's reputation at her workplace was error, and the question becomes whether the error is such as to dictate reversal. A trial court is given considerable latitude in the admission or rejection of evidence at trial. Lovko v. Lovko (1978), 179 Ind. App. 1, 384 N.E.2d 166, 173, trans. denied. Erroneously excluded evidence requires reversal only if the error relates to a material matter or substantially affects the rights of the parties. Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc. (1992), Ind. App., 590 N.E.2d 1085, 1088.
Here the excluded evidence was central to Carol's suitability as a custodial parent and to her credibility as a witness. A significant factor in the trial court's awarding of custody to Carol was its finding that:
"[Brian's] attitude exhibited in front of the children appears to have caused the oldest child, Andrew, to be openly antagonistic toward his mother at times.
During the breakup of the marriage, in January of 1990, without provocation from [Carol], [Brian] began yelling at [Carol], grabbed her by her wrists, shoved her against the wall and finally forcibly removed her from the home and locked the door. This was all done in full view or hearing of the children and they were very upset by [Brian's] treatment of their mother. [Carol], in contrast, has attempted to foster a positive relationship between the children and their father."
Record at 257.
The only evidence before the trial court concerning the January 1990 incident was the testimony of Brian and Carol. The trial court's findings are based solely upon Carol's version of the incident, a version Brian strongly denied. That conflict in the testimony makes Carol's credibility a material issue in this case. Because a key finding of the trial court supporting its custody determination depends upon Carol's credibility, evidence attacking that credibility could substantially affect the rights of the parties and exclusion of that evidence was reversible error. See Clouse v. Fielder (1982), Ind. App., 431 N.E.2d 148, 155 (reversal justified if error in rejection of evidence substantially affects rights of parties).
We reverse the trial court's judgment awarding custody to Carol and remand for a new hearing on that issue.
SULLIVAN, J., concurs.
HOFFMAN, J., dissents with opinion.
HOFFMAN, Judge, dissenting.
I respectfully dissent.
I can agree to extending the rule to allow a person's reputation in the workplace to be admitted. However, I do not find that the refusal in this case is reversible error. The workplace here in question is a considerable distance from the community where Carol lives. It is in a different town and a different county. Here, we are dealing with the best interests of the children who are being cared for and raised in a residential community far removed from the workplace community. Such evidence has little, if any, relevancy to the suitability of a custodial parent. As to Carol's credibility, she testified that in the past she had been dishonest with her husband. Evidence of untruthfulness in the workplace would be merely cumulative.
This trial was before an experienced judge who personally saw and listened to the witnesses, including Carol and Brian. The trial judge heard testimony by 16 witnesses in person, two by deposition, and the parties for a total of 20 witnesses. Testimony spanned over 800 pages of the transcript. This testimony went to the custody issue since there was little, if any, dispute as to the property or its division. After hearing all the testimony and examining the numerous exhibits, one person's opinion as to Carol's reputation in the workplace would have little, if any, effect on the trial judge. It cannot be said that the cumulative evidence of untruthfulness would have altered the decision.
The majority's emphasis on one paragraph of the trial judge's finding as to custody ignores the three preceding paragraphs which also state reasons for the decision. Moreover, as to the paragraph relied upon by the majority, the fact is that an altercation *1325 did take place and Carol was shoved out of the door. This is admitted by Brian. The dispute is as to the severity of the altercation. The trial judge was in the best position to determine the severity.
The refusal to allow testimony as to reputation in the workplace was harmless error, if an error at all.
I would affirm the trial court.
NOTES
[1] Formerly, Acts 1881 (Spec.Sess.), ch. 38, § 283.
[2] Evid.R. 608(a) became effective January 1, 1994. It provides: "The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."